THE PATAPSCO GUANO COMPANY v. THE BOWERS-WHITE
LUMBER COMPANY.

(Filed 27 November, 1907).

**Deeds—Conveyances—Description—Boundaries—Pond.**

> When a pond has become permanent by long, continuous use, it
> acquires a well-defined boundary, and there is no presumption
> that such pond, in the call of a deed, extends to the thread of the
> stream. When, as one of the calls of a deed, it appears, "and
> thence down the bottom to the pond and Kehukee Swamp," the
> pond being well known and established from time immemorial,
> the call stops at the boundary of the pond, and the use of the
> words "Kehukee Swamp" serves only to indicate what waters
> flow into and make up the pond, and thus to locate it.

CIVIL ACTION to recover damages for unlawfully trespass-
ing upon and cutting timber on plaintiff's land and to enjoin
further cutting. The cause was heard upon a statement of
facts agreed by his Honor, *Judge Lyon,* at November Term,
1906, of HALIFAX Superior Court, and judgment was ren-
dered by him in favor of the plaintiff. Defendant appealed.

*Albion Dunn* for plaintiff.
*Kitchin & Smith* for defendant.

BROWN, J. It is unnecessary to set out the lengthy state-
ment of facts agreed contained in the record. It is admitted
that the case turns upon the construction of a deed from R. H.
Smith to George W. Grafflin and upon the following call in
the deed: "and thence down the bottom to the pond and
Kehukee Swamp." His Honor was of opinion that this line
extended to the run of the swamp and did not stop at the edge
of the pond. It is admitted that the pond called for is a well-
known and long-established pond, known as "Smith's Mill
Pond." Taking the deed by "its four corners" and reading
it in the light of the facts agreed, we find ourselves unable to
agree with his Honor. We are of opinion that "the reason of
the thing," as well as the authorities, sustain the defendant's
contention that the aforesaid line stops at the edge of the pond.

It is unnecessary to discuss the case of *Wall v. Wall,* 142
N. C., 387; *Brooks v. Britt,* 15 N. C., 481, and other cases
cited in the brief of the learned counsel for plaintiff.   They
do not militate at all against our conclusion.   If the words
"down the bottom to the pond" did not occur in this deed, the
authorities cited would be in point.   The insertion of those
words in this deed, under the circumstances under which it
was made, denotes the intention of the grantor to stop at the
pond, and the use of the words "Kehukee Swamp" serves only
to indicate what waters flow into and make up the pond, and
thus to locate it.   If this were not so, there would have been no
use in calling for the pond.   Smith's pond appears to be an
old-established pond, of large dimensions, which has existed
"Since the time whereof the memory of man runneth not to
the contrary."   It appears to us that the circumstances and
facts of the case strongly support defendant's contention.
Smith owned the land covered by the pond and swamp and the ·
lands adjoining, including the lands described in the deeds to
plaintiff and in the deed to Brinkley, through whom defend-
ant claims.   He was the owner and operator of the mill, which
from time immemorial had been run by the waters of the
pond.   The pond covered one hundred acres or more, and had
been maintained through generations.   The margin, bank or
edge of said pond is clearly marked by nature and well de-
fined.   The channel or run (to which plaintiff claims the call
in said deed extends) of said pond and swamp had a well-
known and specific name, separate and distinct from the pond
and swamp, rising miles above the said swamp and pond.
This was known as Kehukee Run, while the swamp—the low,
boggy land on either side—was known as Kehukee Swamp,
and the pond as Smith's Mill Pond.   With these patent facts
before the parties when the deed was made, it is evident
Smith intended to convey only to the pond and did not intend
to convey the pond itself, which he would have done had he
extended the call to the run of the swamp from which the

pond had been created. It is hardly to be presumed that Smith intended to destroy the value of his mill by selling its pond, for it appears that immediately after the execution of the Grafflin deed Smith conveyed to Brinkley "the tract of land known as Smith's Mill Pond, including the mill pond, mill," etc. Ever since then Brinkley and those claiming under him have operated the mill by the power furnished by the waters of that pond. Our conclusion is supported by abundant authority. The two encyclopedias sum up the authorities by saying: "It is perhaps the prevailing doctrine, regarded as particularly applicable to the large lakes of this country and qualified in the case of artificial ponds, that, while a general grant of land on a river or stream which is nonnavigable extends the line of the grant to the middle or thread of the current, a grant to a natural pond or lake extends only to the water's edge." Am. and Eng. Enc. (1st Ed.), Vol. XII, p. 642.

"Land bounded on a pond extends only to the margin, and the margin of the pond as it existed at the time of the conveyance is the limit, whether the pond was then in its natural state or raised above it by a dam." Cyc., Vol. V, p. 901.

The American and English Encyclopedia (at p. 653) states the true principle of construction, which differentiates this case from those cited by plaintiff: "The boundary upon an artificial pond raised by a dam swelling a stream over its banks presumptively extends to the thread of the stream, *unless the pond has been so long kept up as to have become permanent and to have acquired another well-defined boundary.*"

To the same effect and in practically the same language the rule is announced in *Waterman v. Johnson,* 13 Pick. (Mass.), 261, and afterwards approved in *Paine v. Woods,* 108 Mass., 160. This rule of construction would not hold good in the case of a purely artificial pond temporarily maintained, the margin or banks of which had not been long established and

clearly marked. Smith's pond is a permanent body of water, which has existed in its present status for generations past, and its margin must necessarily be a landmark well known in the community. We think the principles herein laid down are fully supported by the following authorities among text writers: Angell on Watercourses (6th Ed.), sec. 41; 3 Wash. Real Prop. (5th Ed.), p. 443; Gould on Waters, sec. 203; Devlin on Deeds, sec. 1026; and also by many decided cases. *West Roxbury v. Stoddard,* 7 Allen, 167; *Nelson v. Butterfield,* 21 Me., 238; *Hawthorne v. Stinson,* 28 Am. Dec., 167; *Diedrich v. Railroad,* 42 Wis., 248. It being admitted that the pond called for is known as Smith's Mill Pond, we have a definite and certain identification of the thing called for, amply sufficient to uphold a conveyance of the land covered by its waters, had the land under the pond been conveyed by that name. *My Lord Coke* says, in substance, that where a collection of water has by long existence and usage acquired a specific name, the land by which it is covered may be conveyed under that name, and illustrates it thus: "Stagnum or poole doth consist of water and land, and therefore by the name of stagnum or poole the water and land shall pass also." Co. Litt., 5b.

If land may be conveyed by describing it by a well-known name given to a collection of water covering it, we think that it is equally proper to hold that a boundary line might be located and terminated by calling for such body of water by name. The most interesting and well-considered case on the subject that we have examined is *Boardman v. Scott,* 102 Ga., 404, also reported with copious notes in 51 L. R. A., 178. In this case all the authorities are collected and carefully and elaborately reviewed by *Mr. Justice Fish,* who, in a headnote by himself, states the great weight of authority to hold: "Under a deed bounding the land therein conveyed by an artificial pond which had been in existence for more than forty years, and which had thus become a permanent body of

water and was still being kept up and maintained as such, its waters, however, ebbing and flowing from time to time, so as to leave a margin of land between its high and low water marks, the line of the land so conveyed did not extend to the thread of the stream from whose waters the pond was formed, but only to the low-water mark of the pond at the date of the deed." In that case the collection of water called for was known as McCall's Mill Pond, and it was formed exactly in the manner as Smith's pond was formed, by constructing a dam across a swamp.

Smith's pond has existed for so long a period that it must have become a well-known landmark in the neighborhood, and may justly be considered a permanent body of water and to have acquired in the community as well-known and as well-defined boundaries as most natural lakes or ponds; and under these circumstances we think the rule is the same as that universally applied to natural lakes and ponds.

The judgment of the Superior Court is reversed and the action is dismissed.

Reversed.