BESSIE KELLY AND ANNIE L. KELLY v. H. ELIZABETH KING, TRUSTEE, THE TOWN OF CAROLINA BEACH, J. R. BREWER AND WIFE, ETHEL M. BREWER, R. S. WESTBROOK, C. B. PARMELE, H. F. SHAFFNER, AND HOME REAL ESTATE LOAN AND INSURANCE CO.

ROBERT J. PLUMMER AND WIFE, MARGARET J. PLUMMER, v. H. ELIZABETH KING, TRUSTEE. THE TOWN OF CAROLINA BEACH AND RICHARD S. WESTBROOK.

FRED H. RAYNOR AND LILLIE FLORENCE RAYNOR v. H. ELIZABETH KING, TRUSTEE, THE TOWN OF CAROLINA BEACH AND RICHARD S. WESTBROOK.

CARRIE R. PLUMMER v. H. ELIZABETH KING, TRUSTEE, THE TOWN OF CAROLINA BEACH, AND RICHARD G. WESTBROOK.

O. C. CONNELLY AND WIFE, HATTIE CONNELLY, v. H. ELIZABETH KING, TRUSTEE, THE TOWN OF CAROLINA BEACH, AND RICHARD G. WESTBROOK.

W. E. SPOONER AND WIFE, BETTIE C. SPOONER, v. H. ELIZABETH KING, TRUSTEE, THE TOWN OF CAROLINA BEACH, RICHARD WESTBROOK, HOME REAL ESTATE, LOAN AND INSURANCE COMPANY, W. F. SHAFFNER AND C. B. PARMELE.

W. F. COX v. H. ELIZABETH KING, TRUSTEE, THE TOWN OF CAROLINA BEACH, AND RICHARD G. WESTBROOK.

IDA C. COX v. H. ELIZABETH KING, TRUSTEE, THE TOWN OF CAROLINA BEACH, AND RICHARD WESTBROOK.

(Filed 17 December, 1945.)

### 1. Boundaries §§ 1, 4: Waters and Watercourses § 1—

While the general rule is that a description of land as bordering on a non-navigable stream carries to the thread of the stream, this is rebutted by words which clearly restrict the grant to the edge or shore of the stream; and where the call is to a point on the margin of a swamp and thence along the swamp, the common law rule which carries the riparian owner's title to the thread of the stream does not apply.

### 2. Same—

The description "to the high water mark" of a non-navigable arm of the sea, a broad shallow sound, most of which is dry at low water and the deepest part of which (a ten-foot channel) does not exceed 3 feet at high water and is not over 10 inches at low water, restricts or limits the conveyance to the correctly located line of mean high water as indicated on the ground. Particularly is this so where the title to the marsh lands, lands covered by water, was at the time the lots in question were laid off held by the State, subject to disposition by the State Board of Education, since title to swamp lands is presumed to be in that Board or its assigns until a valid title to same is shown otherwise. G. S., 146-90.

KELLY *v.* KING.

**3. Same—**

There is no presumption that grantors, in a deed describing lands as running to the high water mark of a shallow sound most of which being dry at low water, intended to convey lands beneath the waters of the sound.

**4. Boundaries § 3a: Damages § 1a—**

Where the deeds, under which plaintiffs claim, describe their lots as fronting on a certain avenue and extending back to the high water mark of a shallow sound, their rights are limited by the express words of their deeds, and the boundaries of their lots may not be extended beyond the high water mark of the sound as it existed at the time their titles were acquired; and their titles and right of possession may not be extended to embrace lands which were then covered by the waters of the sound, nor include the use of such waters for practical or esthetic purposes. And upon the filling in of the sound by defendants and others, within the limits of the previous high water mark, the loss of access to the waters or deprivation of view suffered by plaintiffs is *damnum absque injuria.*

**5. Boundaries § 1—**

What are the boundaries of a deed is a question of law for the court. Where they are is a question of fact for the jury.

**6. Boundaries § 3d—**

Where lots are sold by reference to a recorded plat, the effect of reference to the plat is to incorporate it in the deed as part of the description of the land conveyed. And if the deed contains two descriptions, one by metes and bounds and the other by lot and block according to a certain plat or map, the controlling description is the lot according to the plat, rather than the one by metes and bounds.

**7. Boundaries § 3a—**

Ancient grants offered, without sufficient evidence to show their location so as to cover the *locus in quo*, are not admissible in evidence.

APPEAL by plaintiffs from *Frizzelle, J.,* at April Term, 1945, of NEW HANOVER. Affirmed.

These were actions to determine plaintiffs' title to certain lots in the Town of Carolina Beach, based upon allegations that by the acts of the defendants the plaintiffs have been deprived of rights therein with respect to Myrtle Grove Sound. The eight cases entitled as above were consolidated for trial, the causes alleged and the relief sought being substantially the same in each.

The substance of the several complaints was that the plaintiffs named therein had bought lots in a subdivision originally laid out, platted, and mapped by the New Hanover Transit Company, from which by *mesne* conveyances plaintiffs' titles were derived, and that these lots fronted on Carolina Beach Avenue North and extended back therefrom westwardly to Myrtle Grove Sound. It was alleged in each case that the plaintiffs

therein were owners in fee and in possession of the described lots, and that the defendants had wrongfully invaded plaintiffs' rights therein by filling in the western end of said lots and constructing a road thereon, thereby cutting off the plaintiffs from the waters of the sound.

In the case of plaintiffs Kelly the lot was described as Lot 2 in Block 2, according to the map of the northern section of Carolina Beach and as extending about 175 feet westwardly from Carolina Beach Avenue North "to the high water mark of Myrtle Grove Sound."

In the Robert Plummer case the lot was described as Lot 4 in Block 12, according to map recorded in Book 73, pages 32 and 33, New Hanover Registry and extending westwardly from Carolina Beach Avenue North "to the high water mark of the eastern side of Myrtle Grove Sound; thence southwardly along said high water mark or line of the eastern side of Myrtle Grove Sound."

In the Carrie Plummer case the lot is described as Lot 5 in Block 2, according to map of J. L. Becton, C.E., and extending westwardly from Carolina Beach Avenue North "to the high water mark of Myrtle Grove Sound; thence northwardly along the high water mark of Myrtle Grove Sound."

In the Connelly case the lots were described as Lots 2 and 3 in Block 10, according to original plat of northern extension of Carolina Beach, and extending westwardly from Carolina Beach Avenue North about 150 feet "to the high water mark of Myrtle Grove Sound." This lot has since been conveyed to G. C. Bordeaux, who by order has been made party plaintiff.

In the Spooner case the lot was described in the complaint as bounded on the east by Carolina Beach Avenue North, and on west by the run of Myrtle Grove Sound, but in the deed to plaintiffs in this case, offered in evidence, the lot is described as "Lot No. 9 in Block 8, as shown by the official map and plan of Carolina Beach as surveyed, platted and mapped by J. L. Becton, C.E., and duly recorded in Book 73 in office of Register of Deeds of New Hanover County, reference to which map is hereby had for a more particular description of the land and premises conveyed."

In the W. F. Cox case the lot was described as Lot 6 in Block 4, according to maps and plans of Carolina Beach by J. L. Becton, C.E., and extending westwardly from Carolina Beach Avenue North 125 feet "to high water mark of Myrtle Grove Sound."

In the Ida C. Cox case the lot is described as Lot 4 in Block 14, according to official map or plan of a part of Carolina Beach prepared by Becton and Humphrey, C.E., "reference being had to said map or plan for a complete description of the lot herein conveyed."

In the Raynor case the lot was described as Lot No. 1 in Block 6, "according to the original map of Carolina Beach Northern Extension,"

and as extending westwardly from Carolina Beach Avenue North 125 feet "to the low water mark of Myrtle Grove Sound."

It was alleged in each complaint that the back or western end of the lots described extended to Myrtle Grove Sound, and that if the sound was navigable water the plaintiffs were entitled to have the same open, and if non-navigable the lot extended to the thread of the stream; that the use of the water for boating and other purposes was a valuable appurtenance to the lots. In the Kelly case damages were asked "on account of the foregoing conduct of the defendants" in the sum of $1,000.

Each suit purports to have been brought under the Uniform Declaratory Judgment Act to ascertain and declare plaintiffs' rights and title, to the end that plaintiffs be adjudged to be the owners of described lots running back to the present waters of the sound.

The defendants filed answer to each complaint in which they denied the plaintiffs' claims and in one or more of the answers alleged that under a deed from the State Board of Education they own the land west of the western boundary of plaintiffs' lots, and deny invasion of any right or title of plaintiffs. It was admitted that a street over and along a portion of the land covered by defendants' deed and later reclaimed had been laid out and dedicated to public use.

At February Term, 1942, the court ordered a compulsory reference, finding that a complicated question of boundary was involved, requiring personal view of the premises, and named Hon. D. H. Bland of the Goldsboro Bar as referee. Plaintiffs excepted to the order of reference and reserved right to jury trial. After hearing all the evidence, the referee made full findings of fact and submitted his conclusions of law thereon, wherein he recommended that upon all the evidence judgment of nonsuit should be entered as to all defendants in each case; that in any event nonsuit should be entered as to defendants Westbrook, and J. R. Beaver and wife; that if nonsuit be not proper upon all the evidence that judgment should be entered that plaintiffs are owners of their respective lots up to the boundaries as determined, and that plaintiffs have sustained no damage from the work of reclaiming defendants' land, and are not entitled to recover further herein.

The plaintiffs excepted to each and all of the material findings of fact and conclusions of law in the referee's report, and demanded jury trial upon issues presented in each case. Upon the hearing in the Superior Court the plaintiffs offered a portion of the evidence which had been taken and reported by the referee, and rested their cases. The defendants moved for judgment of nonsuit in each case, and the several motions were allowed.

From judgment dismissing the actions, the plaintiffs appealed.

*Poisson & Campbell and Isaac C. Wright for plaintiffs.*
*Emmett H. Bellamy for the defendant Town of Carolina Beach.*
*Bellamy & Bellamy and Kellum & Humphrey for other defendants.*

DEVIN, J.   The several plaintiffs named in the caption instituted their actions against the defendants for substantially the same causes, and for convenience these were consolidated for trial.   For the same reason, since the rights of the parties involved in the several appeals are to be determined according to the same legal principles, the questions presented, except as noted, will be considered as applicable to all.

These actions were brought for the purpose of having plaintiffs' rights in and to described lots in the Town of Carolina Beach determined with respect to access to and use of the waters of Myrtle Grove Sound, from which plaintiffs allege they have been deprived by the filling in by the defendants of a portion of the sound.

Their contention is that as their deeds designate Myrtle Grove Sound as the western boundary of their lots, they may not lawfully be cut off from the waters of the sound by the interposition of reclaimed land which now separates them from the sound; and that while some of the deeds describe the lots as extending to the high water mark of the sound, if the sound be regarded as navigable water defendants have wrongfully deprived them as riparian owners of access to the waters of the sound; and that if, as found by the referee and approved by the court, the sound be regarded as non-navigable, the plaintiffs' western lines would extend to the thread or channel of the stream.

An examination of the evidence reported by the referee which was offered by the plaintiffs, including the various detailed maps, leads to the conclusion that Myrtle Grove Sound where it bordered plaintiffs' lots could not be classed as a navigable stream.   This sound at its head at Carolina Beach, on its eastern side, was a wide shallow salt marsh which at high tide was covered with water, varying in depth from 18 inches to zero.   On the western side was a channel which at high tide at deepest point did not exceed 3 feet in depth, and at low tide the water was confined to a channel some 10 feet wide and 8 or 10 inches deep.   These were facts found by the referee with no substantial contradiction in the evidence offered by the plaintiffs.   *Ins. Co. v. Parmele,* 214 N. C., 63, 197 S. E., 714.

The litigation with which we are here concerned grew out of the fact that the land lying within the limits of Myrtle Grove Sound, which extended north from its southern head a distance of several miles and covered in all more than two thousand acres, was regarded by the State Board of Education as coming within the terms of the statute, G. S., 146-4, and the board conveyed to the defendants the land included in the

sound at its head where it adjoined plaintiffs' lots. The defendants thereafter undertook to dredge a channel along the western side of the sound and to cast the soil thereby excavated upon the eastern portion so as to reclaim land up to the line of the eastern edge or high water mark of the sound. Upon this reclaimed land was laid out a street or road, and upon a portion of it was erected the Town Hall of Carolina Beach.

The plaintiffs, however, maintain that under their deeds the western boundaries of their lots extend to the center of the channel, and hence that the filled in land and street were placed upon their property. The determinative question for decision is whether plaintiffs have any rights in the land west of the high water mark of the sound.

While the general rule is that a description of land as bordering on a non-navigable stream carries to the thread of the stream, *Rose v. Franklin,* 216 N. C., 289, 4 S. E. (2d), 876; *Wall v. Wall,* 142 N. C., 387, 55 S. E., 283, this is rebutted by words which clearly restrict the grant to the edge or shore of the stream. 8 A. J., 762, 11 C. J. S., 577. It was held in *Rowe v. Lumber Co.,* 128 N. C., 301, 38 S. E., 896, and reaffirmed with modification in *Rowe v. Lumber Co.,* 133 N. C., 433, 45 S. E., 830, that where the call is to a point on the margin of a swamp and thence along the swamp, the common law rule which carries the riparian owner's title to the thread of the stream does not apply. This principle was the basis of the decision in *Oemler v. Green,* 134 Ga., 198, and in *Welder v. State* (Tex. Civ. App.), 196 S. W., 868. Numerous other cases are collected in the annotation in 74 A. L. R., 620, 623. We think the description "to the high water mark" of a non-navigable arm of the sea, a broad shallow sound, such as is here disclosed by the evidence, restricts or limits the conveyance to the correctly located line of mean high water as indicated on the ground. 8 A. J., 757, 11 C. J. S., 576. Particularly is this so where the title to the marsh lands, lands covered by water, was at the time these lots were laid off held by the State subject to disposition by the State Board of Education, since the title to swamp lands is presumed to be in that board or its assignees until a valid title to such land is shown otherwise. G. S., 146-90. Nor is it to be presumed that plaintiffs' grantors intended to convey land beneath the waters of the sound. *Guano Co. v. Lumber Co.,* 146 N. C., 187, 59 S. E., 538; *Niles v. Cedar Point Club,* 175 U. S., 300.

Since the deeds under which the plaintiffs claim describe their lots, with exceptions hereinafter noted, as fronting east on Carolina Beach Avenue North and extending back westwardly to the high water mark of Myrtle Grove Sound, it follows that plaintiffs' rights thereunder are limited by the express words of their deeds, and the boundaries of their lots may not be extended beyond the high water mark of the sound as it existed at the time their titles were acquired. Plaintiffs' titles and right of possession

may not be extended to embrace land that was then covered by the waters of the sound, nor include the use of the waters for practical or esthetic purposes. If the defendants or others filled in the eastern portion of the sound within the limits of the previous high water mark, under the circumstances here disclosed, the loss of access to the waters or deprivation of view must be regarded as *damnum absque injuria.*

For the purposes of these actions, the titles of plaintiffs to the lots described in their deeds as fronting on Carolina Beach Avenue North and extending back or westwardly to the high water mark of Myrtle Grove Sound may be regarded as uncontroverted. While the defendants formally denied the plaintiffs' allegations of title, in the Kelly case the defendants allege title in themselves in the tracts of land conveyed to them in the deed from the State Board of Education, and admit that the eastern boundary of their land, which is wholly within the limits of Myrtle Grove Sound, constitutes a common boundary between the lands belonging to defendants and the plaintiffs. And the referee reports the contention of the defendants as being that the western boundary of the lots claimed by plaintiffs is the mean high water mark of the sound which has been correctly located, and that plaintiffs own nothing beyond so far as the marsh land of the sound is concerned, title to which was vested by law in the State Board of Education and by said board conveyed to defendants. To this statement of their position defendants did not except.

What are the boundaries of a deed is a question of law for the court. Where they are is a question of fact for the jury. *Scull v. Pruden,* 92 N. C., 168; *Rose v. Franklin,* 216 N. C., 289, 4 S. E. (2d), 876. Upon the evidence offered we reach the conclusion that it has been correctly determined that by the express language of the conveyances under which plaintiffs claim, the western boundaries of their lots are confined to the high water mark on the eastern side of the sound.

It will be noted, however, that the deeds in two of the cases do not specifically call for the high water mark of the sound as the western boundary. In the Raynor case the western boundary was referred to in the deed as "the low water mark of Myrtle Grove Sound," but the lot is further described in the deed as being designated and known as Lot No. 1 in Block 6, according to a map of Carolina Beach prepared by J. L. Becton, C.E., and duly recorded. By reference to this map, which was offered in evidence, it appears that this, like all the other lots, had a frontage of 50 feet and that the western boundary of this lot was the high water mark of the sound. Furthermore, according to a survey and recorded map made by M. H. Lander, C.E., before the sound was filled in, the distance at this point from the avenue to high water mark of the sound was 125 feet on northern side and 137 feet on south side of said

lot, while the dimensions of this lot extending westward was shown on the map of Becton and Humphrey, on the south side, as 100 feet, and hence did not extend beyond the high water mark. In the Spooner case the lot was described in the complaint as bounded on the west by the run of Myrtle Grove Sound, but the deed offered in evidence described the lot only as "lot No. 9 in Block 8, as shown by the official map and plan of Carolina Beach as surveyed, platted and mapped by J. L. Becton, C.E., and duly registered in Book 73 in the office of the Register of Deeds of New Hanover County, reference to which said maps is hereby had for a more particular description of the lands and premises hereby conveyed." The map referred to, which was in evidence, shows the western boundary of Lot 9 as the high water mark of the sound. The western line of this lot (as well as that of the other lots) is shown as practically straight.

It seems to have been established by numerous decisions of this Court that where lots are sold by reference to a recorded plat, the effect of reference to the plat is to incorporate it in the deed as a part of the description of the land conveyed. *Elizabeth City v. Commander,* 176 N. C., 26, 96 S. E., 736. As was said in *Collins v. Land Co.,* 128 N. C., 563, 39 S. E., 21, "a map or plat referred to in a deed becomes a part of the deed as if it were written therein." *Ins. Co. v. Carolina Beach,* 216 N. C., 778, 3 S. E. (2d), 21; *Pearson v. Allen,* 151 Mass., 79. "Where a deed contains two descriptions, one by metes and bounds and the other by lot and block according to a certain plat or map, the controlling description is the lot according to the plan, rather than the one by metes and bounds. *Nash v. R. R.,* 67 N. C., 413." *Hayden v. Hayden,* 178 N. C., 259, 100 S. E., 515; 130 A. L. R., 643, note. Applying these principles to the evidence in this case, it follows that the high water mark of the sound must be regarded as the western boundary of all of the lots of the plaintiffs.

The defendants in their answer in the Kelly case claim title to the swamp and marsh land originally covered by the waters of Myrtle Grove Sound and west of the eastern high water mark of the sound, under a deed from the State Board of Education. This area they have partially filled in and reclaimed. In order to attack the validity of defendants' deed, the plaintiffs sought to show that this land was covered by ancient grants previously issued by the State. But the referee found and the court apparently approved that plaintiffs had failed to offer sufficient evidence to show the location of either of the grants offered so as to cover the *locus.* The only surveyor offered had attempted to plat the grants but no actual survey had been made. Plaintiffs made no effort to connect their titles with any of the grants referred to. We concur in the ruling of the referee in holding these grants insufficiently located to be admissible in evidence. But in any event the extension of plaintiffs' lots

to the west must be held limited by the high water mark of the sound at the time the reclamation was undertaken and title beyond that line has not been shown. If plaintiffs' actions be considered as laying the foundation for claims for damages for wrongful invasion by defendants of plaintiffs' rights in respect to the described lots, they would seem to be without support in the evidence. Nor does the record disclose any evidence that the value of plaintiffs' lots has been thereby impaired.

Plaintiffs cite *Cornelison v. Hammond, ante,* 535, as authority against a nonsuit, considering the question involved as being one of boundary only, but that case was a processioning proceeding under G. S., 38-1, instituted for the purpose of determining where the line in controversy between adjoining landowners should be located; that is, which of two claimed lines was the true one. Here the question is (1) what is the western boundary line of plaintiffs' lots, and (2) whether plaintiffs have any rights beyond that line which have been invaded by the defendants.

Upon all the evidence and after plenary hearings the referee recommended in his carefully prepared and comprehensive report that judgment of nonsuit should be entered by the court. This view was adopted by the learned judge who heard the case below, and after a careful consideration of the record and evidence offered we are constrained to concur in this ruling.

We think the plaintiffs have failed to offer sufficient evidence to entitle them to present their several causes to the jury, and that the judgment of nonsuit should be

Affirmed.