JAMES P. KAPERONIS AND WIFE, NANCY G. KAPERONIS v. NORTH CAR-
OLINA STATE HIGHWAY COMMISSION.

(Filed 11 December 1963.)

1. **Constitutional Law § 24; Jury § 5—**

The constitutional guaranties of the right to trial by jury relate only to
the trial of issues of fact in those instances in which such right existed at
common law or by virtue of statute at the time the constitutional provi-
sions were adopted. Constitution of North Carolina, Art. I, § 19; Four-
teenth Amendment to the Constitution of the United States.

2. **Same; Eminent Domain § 11—**

G.S. 136-108 giving the trial judge authority to hear and determine any
issues raised by the peadings, other than the issue of damages, in an ac-
tion brought by the owner of land to recover compensation for its taking
for a right of way by the Highway Commission is constitutional, since it
does not deprive a property owner of any right to trial by jury in any in-
stance in which such right existed at the time of the adoption of the Con-
stitutions.

3. **Boundaries §§ 4½, 12; Evidence § 24—**

A map referred to in a deed becomes a part of the deed and need not be
registered, and a duly authenticated copy of the original plat duly identi-
fied, made by a registered surveyor and referred to in the deed, is properly
admitted in evidence.

4. **Evidence § 24; Eminent Domain § 11—**

A copy of a resolution or ordinance of the Highway Commission, certi-
fied by its secretary as a true copy as recorded in the minutes of the
Commission on the date specified, is competent in evidence.

5. **Eminent Domain § 11—**

In an action by the owner of land to recover compensation for the al-
leged additional taking of his lands by increasing the width of the high-
way easement, it is competent for the Commission to introduce its duly
certified resolution authorizing the original easement for the greater width,
with testimony of its engineers and agents that it had occupied and main-
tained the full right of way, which was duly marked on the ground, and had
obtained a release from plaintiffs' predecessor in title for the full width
of the right of way as claimed by it.

6. **Evidence § 40—**

Where a witness, found by the court to be a handwriting expert, testi-
fies that the signature on the release offered in evidence was identical
with the signature on the last will and testament of plaintiffs' predeces-
sor in title, the admission in evidence of a duly authenticated copy of the
release is proper. G.S. 8-40.

7. **Eminent Domain § 11—**

It is not required that an easement obtained by the Highway Commis-
sion prior to June 1, 1959 be recorded, G.S. 47-27, and evidence in this

case of the Commission's initial acquisition of the right of way for the
full width claimed by it, that such right of way was marked on the ground
and encroachments thereon required to be removed, and that plaintiff's
predecessor in title signed a release for the right of way to its full width
as claimed by the Commission, *held* sufficient to sustain the court's find-
ing that the Highway Commission originally appropriated the right of way
for the full width claimed by it.

**8. Same—**

Where it is adjudicated upon supporting evidence that the Highway
Commission had taken no property of the complaining land owners, G.S.
136-119 does not apply, and plaintiffs may not complain of the taxing of
the costs against them upon the dismissal of their action to recover com-
pensation for the asserted taking.

APPEAL by plaintiffs from *MacRae, Special Judge*, 25 March 1963
Special Civil "B" Session of MECKLENBURG.

This is an action instituted by the plaintiffs pursuant to the pro-
visions of G.S. 136-111 to obtain compensation for the alleged taking
of a 20-foot strip of land on the south side of Wilkinson Boulevard
which the plaintiffs allege they own in fee simple subject to certain en-
cumbrances held by private parties thereon.

The plaintiffs further allege in their complaint that the defendant is
the owner of a right of way not in excess of 30 feet from the center
line of said Wilkinson Boulevard on the southerly side of said Boule-
vard and that the taking of an additional 20-foot strip has and will
cause the plaintiffs substantial damage for which they have not been
compensated.

Plaintiffs also allege that on or about 20 November 1961 they re-
ceived a letter from the defendant which referred to "Project 8.16567
Mecklenburg County" (a project which called for the construction of
curb and gutter and paving the remaining portion of the right of way
of 50 feet from the center of Wilkinson Boulevard in front of plaintiffs'
premises or a major portion thereof).

The plaintiffs allege that G.S. 136-108 is unconstitutional in that
the statute purports to give the trial judge the authority to hear and
determine any issues raised by the pleadings in an action brought
pursuant to the provisions of Chapter 136, Article 9, of our General
Statutes, governing condemnation proceedings by the State Highway
Commission other than the issue of damages.

It was stipulated by the parties below that plaintiffs own a fee
simple title to the premises involved subject to three deeds of trust
not relevant to this action, all being subject to the legal effect of the
language contained in plaintiffs' deed as well as in other deeds in their
chain of title. The language referred to above follows the description of

the plaintiffs' property by metes and bounds, to wit, "and more particularly described and shown on a blueprint of survey by T. J. Orr, Registered Surveyor, of the Property of T. Frank Estate dated March, 1948 which blueprint is made a part hereof. * * *

"So much of said property as lies within the bounds of the right of way of Wilkinson Boulevard is subject thereto."

The defendant in its answer alleges that it constructed State Highway Project 8.16567 in Mecklenburg County wholly within the previously acquired and existing 100-foot right of way easement belonging to the State Highway Commission.

The pertinent facts found by the court below are as follows: [Numbering ours.]

"1. The blueprint of a survey of T. J. Orr, Registered Surveyor, of the property of T. Frank Estate dated March, 1948 shows a Right of Way or easement for Wilkinson Boulevard for 50 feet south of the center line of said Wilkinson Boulevard across the northern portion of the plaintiffs' land.

"2. Defendant's Exhibit 'B' is an authenticated copy of the blueprint of a survey of T. J. Orr, Registered Surveyor, of the property of T. Frank Estate dated March, 1948.

"3. The plaintiffs have on said tract of land a stucco building which is located approximately 49 feet south of the center line of Wilkinson Boulevard as shown on plaintiffs' Exhibit '4'. Said building was erected in approximately 1928 or 1929.

"4. The State Highway Commission duly adopted the following ordinance or resolution on October 27, 1926.

'Resolved that in the judgment of the Commission it is necessary for the protection of the State Highway Commission and the safety of travel, that State Highway Projects #635, #650, Charlotte to Gastonia, and Project #542, Greensboro to High Point, have a right of way of one hundred feet, that is fifty feet from the center of the road with such additional right of way inside the curves as will provide for at least two hundred feet clear vision, the Chairman of the State Highway Commission is authorized and empowered to take all necessary legal steps in the name of the Commission to acquire said right of way either by purchase, gift or condemnation.'

"5. The State Highway Commission completed Project 6503 on September 17, 1928. This project was for grading the entire length of Wilkinson Boulevard from the City Limits of Charlotte to the Catawba

River. The project called for a right of way of 100 feet or 50 feet each side of the center line of Wilkinson Boulevard. The defendant's Exhibit 'H' are the plans and specifications and show the work done on said project.

"6. After the completion of Project 6503, the State Highway Commission placed wooden 4 x 4 posts, painted white, with the notation R/W along Wilkinson Boulevard on either side of the highway 50 feet from the center line of the highway. These posts extended approximately 2 feet out of the ground and were placed approximately every 1000 feet alternating from north to south of the highway (or 2000 feet apart on either side of the highway), and at all points of curves and points of tangents.

"7. A surveyor's 'hub' with a tack was placed on the land now owned by the plaintiffs, 50 feet from the center line of the highway.

"8. The State Highway Commission appropriated a 100 foot right of way for Wilkinson Boulevard from the City Limits of Charlotte to the Catawba River in September, 1928 by the construction of Project 6503.

"9. The lands of the plaintiffs were owned by Katie Frank from January 9, 1924 until her death on August 7, 1930.

"10. While Project 6503 was being constructed, T. Frank, husband of Katie Frank, operated a barbecue restaurant and had a wooden building located on the aforesaid land. The building occupied an area within 50 feet south of the center line of Project 6503. This building was removed in approximately 1928.

"11. Katie Frank's signature appears on defendant's Exhibit 'D' which is a release by T. Frank to the State Highway Commission for all damages on Project No. 6503 and bears the date March 5, 1929 [which release reads as follows: 'T. Frank. *RELEASE OF CLAIM FOR DAMAGES.* Project 6503, Mecklenburg County, North Carolina. I, T. Frank, of Rte. 4, Charlotte, N. C., in consideration of Eight Hundred and Fifty ($850.00) Dollars, Warrant No. 60468, paid by the North Carolina State Highway Commission, hereby release and discharge the said Commission from all claims and demands which I have against it in law or in equity, arising out of any and all contracts, liabilities, acts, and omissions in the past or which may result from the present condition of things. Witness my hand and seal this 29th day of February, 1929. T. Frank (SEAL) Katie Frank'].

"12. Katie Frank had actual notice of the construction of Project 6503 in March, 1929.

"13. In approximately 1930 through 1931, the State Highway Commission erected signs at the Charlotte City Limits and along Wilkinson Boulevard west to the Catawba River on either side of Wilkinson Boulevard at intervals of approximately 2½ miles. Said signs were similar to defendant's Exhibit 'E' and bore the legend 'Notice—R/W of this highway 50 feet each side of the center line.' These signs have been maintained until the present time by the State Highway Commission.

"14. Mr. R. Brown was employed by the State Highway Commission from 1933 until 1957 as Maintenance Supervisor for Mecklenburg County. During the period of his employment, his department maintained the entire 100 foot right of way on Wilkinson Boulevard. Crews under his direction cut grass on the right of way, cleaned ditches and cleared all trees except shade trees in front of residences. On one occasion in 1950 Mr. Brown required the plaintiffs' predecessor in title, M. *(sic)* Kaperonis, to remove a curb or a low wall obstruction from the 50 foot right of way which had been erected on the property now owned by the plaintiffs. Mr. Brown observed the 4 x 4 right of way post in place 50 feet from the center line of Wilkinson Boulevard all along the Boulevard while he was maintaining Wilkinson Boulevard.

"15. On January 8, 1962, the State Highway Commission began Project 8.16567. This project was a widening of the paved portions of Wilkinson Boulevard adjacent to the plaintiffs' property from 36 feet to 85 feet, and placing curbing along the edge of the pavement. This project was completed October 17, 1962. * * *"

The court below concluded as a matter of law that,

"1. The plaintiffs have record title to the aforesaid triangular tract of land subject to the right of way of the State Highway Commission for a highway of 50 feet as shown on the blueprint of survey of T. J. Orr dated March 1948, which survey is incorporated by reference in the deed under which plaintiffs claim title;

"2. The State Highway Commission entered and appropriated a 100 foot easement for Wilkinson Boulevard by Project 6503, which project was completed on September 17, 1928, and the right to compensation for the taking of any portion of the lands which the plaintiffs now own belonged to the then owner of the fee, Mrs. K. Frank. Said claim to compensation was not assigned to the plaintiffs by the various deeds conveying title to the fee to the plaintiffs. The plaintiffs have no claim for compensation for the taking of the 50 foot highway right of way in September, 1928;

"3. Any claim for compensation for the taking of the 100 foot easement, 50 feet of which was across the land now owned by the plaintiffs, was barred by the applicable Statute of Limitations six months after the completion of Project 6503, which project was completed September 17, 1928;

"4. The defendant State Highway Commission did not take any property of the plaintiffs by the construction of its project 8.16567, and there is no issue of damages to submit to a jury;

"5. That North Carolina General Statutes 136-108 is constitutional and does not deprive the plaintiffs of their right to trial by jury as the same is guaranteed by the North Carolina and United States Constitution.

"NOW, THEREFORE, it is ORDERED, ADJUDGED AND DECREED:

"1. That the blueprint of survey of the property of T. Frank Estate dated March, 1948 which has been introduced into evidence as defendant's Exhibit 'B' constitutes the filing of a plat in this action in accordance with G.S. 136-106 (C).

"2. That the plaintiffs' motion that this matter be transferred and heard before a jury is denied.

"3. That this action be and is hereby dismissed on its merits.

"4. That the costs of this action be taxed against the plaintiffs."
The plaintiffs appeal, assigning error.

*Henderson, Henderson & Shuford; Lloyd F. Baucom for plaintiff appellants.*

*Attorney General Bruton, Asst. Attorney General Harrison Lewis, Trial Attorney Andrew McDaniel; and J. Marshall Haywood; Bradley, Gebhardt, DeLaney & Millette (Associate Counsel) for the Highway Commission.*

DENNY, C.J. The appellants have set out 45 assignments of error in the record on appeal in this case. It is not practical to undertake to discuss them *seriatim*. We shall undertake, however, to discuss those questions raised which we deem necessary to a proper disposition of the appeal.

The appellants assign as error the ruling of the court below holding that G.S. 136-108 is constitutional and that the plaintiffs were not entitled to a jury trial in the hearing below.

The constitutionality of this statute is attacked on the ground that it authorizes the trial judge to hear and determine any issues raised by the pleadings in an action brought pursuant to the provisions of Chapter 136, Article 9, of our General Statutes governing the taking or condemnation of land by the State Highway Commission other than the issue of damages.

After a plat of the land alleged to have been taken has been filed as required by G.S. 136-106 (C), it is provided in G.S. 136-108 as follows: "* * * (T)he judge, upon motion and ten (10) days' notice by either the Highway Commission or the owner, shall, either in or out of term, hear and determine any issue raised by the pleadings other than the issue of damages, including, if controverted, questions of necessary and proper parties, title to the land, interest taken, and area taken."

Since the decision of this Court in the case of *Railroad v. Davis* (1837), 19 N.C. 451, it has been universally held in this jurisdiction that private property may be taken for a public purpose without the intervention of a jury. Furthermore, compensation need not precede or be made contemporaneous with the taking, but the amount of damages may be determined subsequent to the taking. Ruffin, C.J., speaking for the Court, said: "* * * (T)he case of *Smith v. Campbell,* 10 N.C. 590, is a decision that is not a controversy 'respecting property,' within the sense of the Bill of Rights. But the remaining words of the clause yet more clearly exclude this case from its operation. 'The ancient mode of trial by jury,' is the consecrated institution. This expression has a technical, peculiar, and well understood sense. It does not import that every legal controversy is to be submitted to and *determined* by a jury, but that *the* trial by jury shall remain as it anciently was. Causes may yet be determined on demurrer, and that being an issue of law is determined by the Court. Final judgment may also be taken on default, when the whole demand in certainty is thereby admitted; * * * These are all controversies respecting property in the same sense with the present, but they are none of them trials or cases for trials by jury. There is no *trial* of a cause, standing on demurrer or default. *Trial* refers to a dispute and *issue* of fact, and not to an issue of law, or inquisition of damages. * * *

"The opinion of the Court is, that it was competent to *(sic)* the legislature to adopt the mode it did, for the assessment of the damages to the defendant."

The law at the time the above case was decided authorized the appointment of freeholders to assess the damages in a condemnation proceeding, but there was no right of appeal to the Superior Court for a

hearing before a jury with respect to the amount of such damages. That right was not given to the landowner until the enactment of Chapter 148 of the Public Laws of 1893, now codified as G.S. 40-20.

In Nichols on Eminent Domain (1950), 3rd Ed., Vol. I, section 4.105(1), at page 351, *et seq.*, it is said: "Due process does not forbid a jury trial, nor does it require a jury trial. In any discussion of this problem consideration must be given to the effect of the Seventh Amendment of the Federal Constitution and its corresponding provisions in the several state Constitutions which preserve the common law right of trial by jury.

"* * * It had become the practice in almost all of the original thirteen states at the time when their Constitutions were adopted to refer the question of damages from the construction of ways or drains or mill dams to a commission of viewers or appraisers, generally three or five in number. It is accordingly well settled that the assessment of damages in eminent domain proceedings by a judicial tribunal other than a jury constitutes due process of law, and consequently is not a violation of the Fifth Amendment when the taking is by the United States, or of the Fourteenth Amendment when the taking is by authority of a state.

"The Seventh Amendment to the United States Constitution, in terms, protects the right to trial by jury in United States courts, but it merely 'preserves' the right of trial by jury in 'suits at common law.' *Condemnation proceedings are not suits at common law; moreover, if a right to trial by jury had been given by this amendment, it would have been created, not preserved, for in this class of cases it did not previously exist.* Accordingly, it has been repeatedly held that when land is taken by authority of the United States, the damages may be ascertained by any impartial tribunal. Similarly, when condemnation proceedings brought under authority of a state statute are transferred to a United States court because of diversity of citizenship of the parties, a jury trial need not be had in the Federal court unless it was required in the state in which the proceedings originated." (Emphasis added.)

The foregoing authority, in footnote No. 26, page 357, states: *"It is held in North Carolina that a proceeding to assess damages for the taking of land by eminent domain is not a controversy concerning property within the meaning of the Constitution of North Carolina. Smith v. Campbell, 3 Hawks (N.C.) 590; Raleigh, etc. R.R. Co. v. Davis, 2 Dev. and B (N.C.) 451."* (Emphasis added.)

Likewise, in 18 Am. Jur., Eminent Domain, section 337, page 979, it is said: "Trial by jury in eminent domain proceedings is not essential

to due process of law. A state may authorize any just and reasonable method of determining the amount of compensation for land taken for the public use, without violating the Fourteenth Amendment or the similar provisions of the state Constitutions. Most of the state Constitutions contain some specific provision in regard to trial by jury, but none of them require jury trial in all justiciable controversies that may arise. The usual requirement is that the right to jury trial shall remain "inviolate,' or the idea is expressed in some other phraseology, that no law shall be enacted cutting off trial by jury in such cases as it was customary to employ it when the Constitution was adopted. As it has always been customary in almost every state to have the damages in eminent domain cases determined by three or more appraisers or commissioners without the intervention of a jury at any stage of the proceedings, it is held in such states that there is no constitutional right of jury trial in eminent domain cases."

In the case of *R.R. v. Gahagan*, 161 N.C. 190, 76 S.E. 696, the plaintiff sought the condemnation of certain lands owned by the defendant for a right of way for railroad purposes. The defendant contended he had the right to have certain preliminary questions submitted to a jury and appealed to this Court from the denial thereof. In writing the opinion, this Court quoted with approval from the case of *R.R. v. R.R.*, 148 N.C. 59, 61 S.E. 683, as follows: "It is manifest that the pleadings, in this condition, do not raise 'issues of fact,' requiring the cause to be transferred to the civil-issue docket, as required by section 529, Revisal (now G.S. 1-174). These preliminary questions are to be decided by the clerk. If he finds against the petitioner upon them, he dismisses the proceeding, and, if so advised, the petitioner excepts and appeals to the judge, who hears and decides the appeal. * * * By the statute (1893 chapter 148; Revisal, sec. 2588 [now G.S. 40-20] it was provided that, in condemnation proceedings by any railroad or by any city or town, 'any person interested in the land, or the city, town, railroad or other corporation, shall be entitled to have the amount of damages assessed by the commissioners or jurors heard and determined upon appeal before a jury of the Superior Court, in term, if upon the hearing of such appeal a jury trial be demanded.' *This limitation upon the right to demand trial by jury clearly excludes the idea that any such right is given in respect to the questions of fact to be decided preliminary to the question of damages.* In *Durham v. Rigsbee*, 141 N.C. 128, the question presented upon this exception is discussed by Mr. Justice Brown. Referring to the allegation that the petitioner has been unable to acquire the title, and the reason therefor: 'While this is a necessary allegation of the petition, it is not an issuable fact for the

jury to determine. The judge was right in refusing to submit it to the jury. Since the act of 1893 (Revisal, sec. 2588 [now G.S. 40-20] the defendants had a right to demand a jury trial upon the matter of compensation'." (Emphasis added.) *Abernathy v. R.R.*, 150 N.C. 97, 63 S.E. 180.

In the case of *In re Annexation Ordinances*, 253 N.C. 637, 117 S.E. 2d 795, the petitioners contended that the Act pursuant to which the annexation ordinances were adopted was unconstitutional for that it denied to them the right of trial by jury in violation of Article I, Section 19, of the Constitution of North Carolina. This Court held: "* * * The procedure and requirements contained in the Act under consideration being solely a legislative matter, the right of trial by jury is not guaranteed, and the fact that the General Assembly did not see fit to provide for trial by jury in cases arising under the Act, does not render the Act unconstitutional.

"The right to a trial by jury, guaranteed under our Constitution, applies only to cases in which the prerogative existed at common law, or was procured by statute at the time the Constitution was adopted. The right to a trial by jury is not guaranteed in those cases where the right and the remedy have been created by statute since the adoption of the Constitution. *Groves v. Ware*, 182 N.C. 553, 109 S.E. 568; *McInnish v. Bd. of Education*, 187 N.C. 494, 122 S.E. 182; *Hagler v. Highway Commission*, 200 N.C. 733, 158 S.E. 383; *Unemployment Comp. Com. v. Willis*, 219 N.C. 709, 15 S.E. 2d 4; *Belk's Dept. Store, Inc. v. Guilford County*, 222 N.C. 441, 23 S.E. 2d 897; *Utilities Commission v. Trucking Co.*, 223 N.C. 687, 28 S.E. 2d 201. This contention of petitioners is without merit."

We concur in the ruling of the court below in holding that the challenged statute is constitutional. This assignment of error is overruled.

The appellants assign as error the admission in evidence of defendant's Exhibit "B." This exhibit was identified as a blueprint of a survey by T. J. Orr, Registered Surveyor, of the property of the T. Frank Estate, dated March 1948, and which shows a right of way of 50 feet south of the center of Wilkinson Boulevard across the northern portion of plaintiffs' land.

Mrs. T. J. Orr, a witness for the defendant, testified that she is the widow of the late T. J. Orr, who died in 1956 and who had been a Registered Surveyor engaged in the practice in Charlotte. That her husband had a system for filing the original drawings of surveys that he made. That she examined the files and found the original of such a drawing and that defendant's Exhibit "B" is a print made from the original drawing which she found in her husband's files—dated March

1948. That she was a surveyor herself and had helped in her husband's office since 1934; that both of them worked together on the filing of his original drawings.

Bob Pharr, a witness for the plaintiffs, was admitted to be an expert land surveyor. He testified, on cross-examination, "That in preparing surveys of Wilkinson Boulevard from time to time, the witness, when he has shown a right of way on Wilkinson Boulevard, showed a 50-foot right of way on each side of the center line; that he was not sure that he had seen the plat by T. J. Orr of the property of the T. Frank Estate. That defendant's Exhibit 'B' is a plat by T. J. Orr of the property of the T. Frank Estate. That defendant's Exhibit 'B' is a plat which fitted the description in the said deed. That said plat showed a highway right of way as 50 feet, going south from the center line of Wilkinson Boulevard. * * *"

Ray Rankin, a witness for the plaintiffs, was admitted to be an expert in title examination work. This witness testified, on cross-examination, that he had certified the plaintiffs' title to the Citizens Bank for a loan currently existing in favor of that bank. That in making his search, "he found one survey by T. J. Orr, dated September 25, 1954, which in his opinion was a survey of the premises. That the Orr survey showed a 50-foot right of way as measured from a line down Wilkinson Boulevard. That the survey was among several papers in the title office which he used along with two or three, or maybe four other surveys, furnished him by the bank at the time it requested its title search. * * * That defendant's Exhibit 'B' is generally a plat of the property described in Deed Book 1313, Page 1 (this is the deed under which plaintiffs claim title to the premises involved), that it showed a right of way on Wilkinson Boulevard of 50 feet on the south side of the center line, and that it bore a notation 'property of T. Frank Estate'."

This witness further testified that in examining the title to the plaintiffs' property he relied in some degree on a survey made by Fred B. Davis, Registered Surveyor, dated 3 August 1960, and that the Davis survey also showed a right of way for Wilkinson Boulevard south of the center line in front of plaintiffs' property of 50 feet.

A map or plat referred to in a deed becomes a part of the deed and need not be registered. *Collins v. Land Co.*, 128 N.C. 563, 39 S.E. 21. See also *Lantz v. Howell*, 181 N.C. 401, 107 S.E. 437.

In *Kelly v. King*, 225 N.C. 709, 36 S.E. 2d 220, it is said: "It seems to have been established by numerous decisions of this Court that where lots are sold by reference to a recorded plat, the effect of reference to the plat is to incorporate it in the deed as a part of the de-

scription of the land conveyed. *Elizabeth City v. Commander*, 176 N.C. 26, 96 S.E. 736. As was said in *Collins v. Land Co.*, 128 N.C. 563, 39 S.E. 21, 'a map or plat referred to in a deed becomes a part of the deed as if it were written therein.' *Ins. Co. v. Carolina Beach*, 216 N.C. 778, 3 S.E. 2d 21; *Pearson v. Allen*, 151 Mass. 79. 'Where a deed contains two descriptions, one by metes and bounds and the other by lot and block according to a certain plat or map, the controlling description is the lot according to the plan, rather than the one by metes and bounds. *Nash v. R. R.*, 67 N.C. 413.'*Hayden v. Hayden*, 178 N.C. 259, 100 S.E. 515; 130 A.L.R. 643, note."

Therefore, we hold that when the plaintiffs' predecessors in title conveyed the premises involved herein, described by metes and bounds, and for a more particular description incorporated in said deeds by reference the blueprint of the survey of T. J. Orr, as set out herein, and added that "(s)o much of said property as lies within the bounds of the right of way of Wilkinson Boulevard is subject thereto"; that the right of way of 50 feet as shown on said plat was notice to the grantees in said deeds that the State Highway Commission claimed said 50-foot right of way across the land conveyed. *Elizabeth City v. Commander*, 176 N.C. 26, 96 S.E. 736.

This assignment of error is overruled.

The plaintiffs further assign as error the admission in evidence of the resolution or ordinance adopted by the State Highway Commission on 27 October 1926, authorizing the Chairman of the State Highway Commission to take all necessary legal steps in the name of the Commission to acquire a 100-foot right of way for Projects 635 and 650, from Charlotte to Gastonia; and the plaintiffs further assign as error the admission of any and all evidence tending to show that the State Highway Commission let contracts for the construction of what is now known as Wilkinson Boulevard, as Project 6503, and that the Commission took possession of the right of way as hereinabove set out, showing said right of way to be 100 feet, 50 feet from the center of the Boulevard to the north and south thereof, and has had possession thereof and maintained said right of way since the completion of said Boulevard in 1928.

A copy of the purported resolution or ordinance adopted by the State Highway Commission on 27 October 1926, authorizing a 100-foot right of way for what is now Wilkinson Boulevard between Charlotte and Gastonia, was certified by the Secretary to the Highway Commission as a true and correct copy of said resolution, as recorded in the minutes of the State Highway Commission on the above date.

We hold that the admission in evidence of this resolution was proper.

We likewise hold that the evidence given by various engineers and agents of the State Highway Commission, to the effect that since 1928 the State Highway Commission has occupied and maintained a 100-foot right of way within which the Wilkinson Boulevard was constructed and that said right of way has been marked in the manner hereinabove set out, was admissible. These assignments of error are overruled.

The appellants further assign as error the admission in evidence of a duly authenticated photostatic copy of the release executed by T. Frank and Katie Frank on 5 March 1929, defendant's Exhibit "D." It appears that the genuineness of the signature of Katie Frank, which appears on the release, was challenged by the plaintiffs but proven by admissible evidence. An identification technician for the Mecklenburg County Police, "an expert as found by the court," testified that the signature of Katie Frank on the release and her signature on her last will and testament, which was defendant's Exhibit "C," were, in the opinion of the witness, made by one and the same person.

G.S. 8-40 provides that handwriting may be proved by comparison with other writing proved to the satisfaction of the judge to be genuine. *In re Will of Gatling,* 234 N.C. 561, 68 S.E. 2d 301; *Newton v. Newton,* 182 N.C. 54, 108 S.E. 336.

This assignment of error is also overruled.

It is conceded by all parties to this action that the Old Dowd Road had a right of way of 60 feet, 30 feet from the center of said road. This 60-foot right of way lies wholly within the 100-foot right of way within which Wilkinson Boulevard was constructed adjacent to the property of the plaintiffs. The width of the right of way on the Old Dowd Road is further confirmed in the case of *Long v. Melton,* 218 N.C. 94, 10 S.E. 2d 699, where the controversy involved was one of ingress and egress to and from Wilkinson Boulevard over a portion of the right of way of the Old Dowd Road, not included in the right of way of the Wilkinson Boulevard. The Court said: "The new Wilkinson Boulevard is 100 feet wide and paved 40 feet in the center. * * * The 60-foot right of way of the Old Dowd Road overlaps for some distance on the 100-foot right of way of the new Wilkinson Boulevard."

If the defendant never obtained any additional right of way from the Franks in 1928, when Project 6503 was constructed, why did T. Frank remove his barbecue lodge from the 20-foot strip of land now in controversy? Moreover, why did the State Highway Commission pay $850.00 for the release executed on 5 March 1929 by the Franks? Certainly, the State Highway Commission in 1928 had no right to require the removal of T. Frank's barbecue lodge if it was not located within

the right of way claimed and established in connection with the construction of Project 6503—the Wilkinson Boulevard.

Furthermore, if T. Frank and his wife, Katie Frank, or either of them, had instituted an action to recover additional damages in connection with the alleged taking of the additional 20-foot right of way across the Frank's property in addition to the 30-foot right of way on the Old Dowd Road, such action could not have been maintained unless instituted within six months after the completion of Project 6503, the construction of Wilkinson Boulevard. Chapter 160 of the Public Laws of 1923, now codified, as amended, as G.S. 136-19. Moreover, if such an action had been brought after the Franks signed the release set out hereinabove, such release could have been pleaded in bar of the right to recover any further compensation. *Laughter v. Highway Commission*, 238 N.C. 512, 78 S.E. 2d 252.

The appellants argue that the defendant has not established title to the right of way claimed because it has no deed of easement duly recorded. Be that as it may, it will be noted that Chapter 1244 of the Session Laws of 1959, amending G.S. 47-27, reads as follows: "From and after July 1, 1959 the provisions of this section shall apply to require the State Highway Commission to record as herein provided any deeds of easement, or any other agreements granting or conveying an interest in land which are executed on or after July 1, 1959, in the same manner and to the same extent that individuals, firms or corporations are required to record such easements."

It further appears from the evidence that in the construction of Project 8.16567, begun on 8 January 1962 and completed on 17 October 1962, that the paving, as well as the curb and gutter, was constructed wholly within the 100-foot right of way of the Wilkinson Boulevard.

The appellants further assign as error the action of the court below in taxing the plaintiffs with the costs in this action. They contend that G.S. 136-119 requires that the costs be taxed against the State Highway Commission. We do not concede that the provisions of G.S. 136-119 apply when it becomes apparent that there has been no taking of property from the complaining landowner.

We think the evidence adduced in the trial below clearly shows that the defendant took possession of a 50-foot right of way across the land now owned by the plaintiffs and that it has continuously asserted its right thereto and kept said right of way duly marked and has maintained it at all times since the completion of Project 6503 in 1928, except the plaintiffs or one of their predecessors in title constructed a Perma-Stone veneer over the stucco wall on the northern edge of plaintiffs' barbecue lodge building which encroaches on the 50-foot

right of way approximately nine inches, and further constructed a sign and marquee which overhang a walkway located within 50 feet of the center of Wilkinson Boulevard. However, the existence of these encroachments are insufficient to establish the plaintiffs' contention that the defendant never claimed a 50-foot right of way across their property until 20 November 1961, when it notified these plaintiffs to remove the aforesaid encroachments from said 50-foot right of way.

In our opinion, the remaining assignments of error present no prejudicial error that would warrant another hearing. The facts found by the court below are supported by competent evidence, and the facts found are sufficient to support the conclusions of law reached by the trial judge. Therefore, the judgment of the court below is, in all respects,

Affirmed.