DEPARTMENT OF TRANSPORTATION v. CHARLES EDWARD HUMPHRIES AND WIFE, LORETTA HUMPHRIES; W. J. ALLRAN, III, TRUSTEE; NATIONSBANK OF NORTH CAROLINA (FORMERLY NCNB OF NORTH CAROLINA)

No. 232PA97

(Filed 6 March 1998)

**Easements § 16 (NCI4th)— unrecorded 1952 highway right-of-way—purchaser for value protected**

The trial court erred by granting DOT a right-of-way across defendant's land where the predecessor to DOT acquired a right-of-way in 1952 pursuant to an agreement with defendants' predecessors in title; the right-of-way agreement was never recorded with the Register of Deeds, but was kept on file in the Department of Transportation; none of the deeds in defendants' chain of title refer to the right-of-way agreement; and it was stipulated that defendants were bona fide purchasers for value. DOT right-of-way agreements were required to be recorded in order to prevail over a bona fide purchaser for value prior to the 1959 amendment to N.C.G.S. § 47-27, which speaks solely to the process by which DOT is required to record and does not change in any way the validity of right-of-way agreements executed prior to 1 July 1959 as to purchasers for valuable consideration. Granting validity to an unrecorded right-of-way, not excepted by the statute, against a bona fide purchaser for value would create precisely the confusion and inequities in land ownership that the Conner Act was intended to protect against.

On discretionary review pursuant to N.C.G.S. § 7A-31, prior to a determination by the Court of Appeals, of an order entered on 7 February 1997 by Patti, J., in Superior Court, Gaston County, granting

plaintiff a right-of-way over defendant Humphries' property. Heard in the Supreme Court 19 November 1997.

*Michael F. Easley, Attorney General, by J. Bruce McKinney, Assistant Attorney General, for plaintiff-appellee.*

*Long, Parker & Warren, P.A., by Robert B. Long, Jr., and Kimberly A. Lyda, for defendant-appellants Charles and Loretta Humphries.*

ORR, Justice.

This case arises out of a condemnation action instituted by plaintiff, North Carolina Department of Transportation (DOT), against defendants Charles and Loretta Humphries on 8 May 1995 as part of DOT's project to widen North Carolina Highway 150. DOT is claiming an existing right-of-way, seventy-five feet from the centerline of the highway, pursuant to an unrecorded right-of-way agreement.

Although defendants own three tracts of land along Highway 150, the only portion of defendants' property at issue in the present case is tract 2. Defendants purchased tract 2 on 22 July 1969 and were bona fide purchasers for value. According to the description of the property contained in the chain of title, the tract 2 property line in question is located approximately thirty feet from the centerline of N.C. Highway 150 and runs with the western edge of the right-of-way for U.S. Highway 150. Defendants contend that under N.C.G.S. § 47-27, DOT was required to record the right-of-way agreement in order to prevail over a bona fide purchaser for value. We agree.

In 1951-1952, the State Highway and Public Works Commission, now the DOT, acquired a right-of-way in Gaston County for the construction of N.C. Highway 150. The right-of-way agreement, which DOT relies on, was obtained by DOT on 20 March 1952 from one of defendants' predecessors in title, James and Mary Black. The right-of-way agreement between DOT and the Blacks was never recorded in the Gaston County Register of Deeds Office, but was kept on file in the office of the right-of-way branch of the Department of Transportation in Raleigh, North Carolina. None of the deeds in defendants' chain of title to tract 2 refer to the right-of-way agreement between the Blacks and DOT, and nothing in the record references the right-of-way agreement.

In the present case, the trial court made a finding of fact that DOT "did not maintain any of the area on defendants' property beyond 30

feet from the centerline of N.C. 150." In fact, the trial court noted that defendants have placed improvements within the claimed right-of-way without any objection by DOT. The nearest sign which references the claimed right-of-way is located more than one-eighth of a mile, but less than one-fourth of a mile, from the tract 2 property. This sign states, "NOTICE—RIGHT-OF-WAY OF THIS HIGHWAY INDICATED BY MARKERS. ALL ENCROACHMENTS PROHIBITED. S.H. & P.W.C." However, the sign does not include the width of any claimed right-of-way. Finally, the seventy-five-foot right-of-way claimed by DOT is within approximately one foot of defendants' home.

In the present case, DOT instituted a condemnation action against defendants on 8 May 1995 claiming an existing seventy-five-foot-of-centerline right-of-way over their property. Defendants then filed an answer to the complaint denying the validity of the right-of-way claimed by DOT. On 7 February 1997, the trial court entered an order granting DOT "a right of way across defendants' subject tract 75 feet in width from the centerline of N.C. 150." In its order, the trial court concluded that "by virtue of N.C.G.S. § 47-27, DOT was not required to record the March 20, 1952 Right-of-Way Agreement."

The issue presented to us by this appeal is whether the trial court erred in concluding that DOT had a valid seventy-five-foot-of-centerline right-of-way, as set forth in the right-of-way agreement executed by defendants' predecessors in interest but never recorded. DOT contends that the Court of Appeals' holding in *Department of Transp. v. Auten*, 106 N.C. App. 489, 417 S.E.2d 299 (1992), and this Court's holding in *Kaperonis v. N.C. State Highway Comm'n*, 260 N.C. 587, 133 S.E.2d 464 (1963), control the outcome in the present case.

In *Auten*, the defendant challenged the trial court's ruling that prior to 1 July 1959, the DOT was not required to record right-of-way agreements. The defendant claimed that the Highway Commission did not have title to the land because the prior right-of-way had not been recorded. *Auten*, 106 N.C. App. at 490, 417 S.E.2d at 300. In a brief opinion, the Court of Appeals concluded, "We read *Kaperonis* to hold that G.S. 47-27 does not require the DOT to record deeds of easement or other agreements conveying interests in land executed prior to 1 July 1959." *Id.* at 491, 417 S.E.2d at 301.

However, this statement by the Court of Appeals misconstrues our holding in *Kaperonis*. In *Kaperonis*, we held that the State Highway Commission had a one-hundred-foot right-of-way arising

out of an easement held by the State since 1929. *Kaperonis*, 260 N.C. at 600, 133 S.E.2d at 474. The right-of-way instrument itself was never recorded; however, the landowners had record notice of the right-of-way by virtue of a survey of the property which had been incorporated into a deed in the chain of title. This Court held

> that when the plaintiffs' predecessors in title conveyed the premises involved herein, described by metes and bounds, and for a more particular description incorporated in said deeds by reference [to] the blueprint of the survey of T.J. Orr, as set out herein, and added that "(s)o much of said property as lies within the bounds of the right of way of Wilkenson Boulevard is subject thereto"; that the right of way of 50 feet as shown on said plat was notice to the grantees in said deeds that the State Highway Commission claimed said 50-foot right of way across the land conveyed.

*Id.* at 598, 133 S.E.2d at 472. Thus, although we held that the defendant had a valid right-of-way, we did not rely on N.C.G.S. § 47-27. Instead, we focused on the fact that the plaintiffs had notice of the claimed right-of-way.

Further, in *Browning v. N.C. State Highway Comm'n*, 263 N.C. 130, 139 S.E.2d 227 (1964), this Court limited the holding in *Kaperonis* to its particular circumstances. In discussing *Kaperonis*, this Court stated:

> The facts in this case are substantially different from those in the case of *Kaperonis v. Highway Commission*, 260 N.C. 587, 133 S.E.2d 464. In that case, the deed conveying the property from the predecessors in title to Kaperonis referred to a certain plat which showed an existing 50-foot right of way across the property conveyed, and the plat was made a part of the description. Moreover, the plat was introduced in evidence and identified as the plat referred to and incorporated in the deed. Furthermore, the predecessors in title to Kaperonis had signed a release of claim for damages in consideration of $850.00 paid to them by the Highway Commission, which release was signed upon completion of the project involved in 1929. In our opinion, the evidence in the *Kaperonis* case was sufficient to have established a right of way by prescription, had the Commission not theretofore purchased the right of way from his predecessors in title.

*Browning*, 263 N.C. at 134-35, 139 S.E.2d at 230. Thus, although the *Kaperonis* Court referenced the 1959 amendment to N.C.G.S. § 47-27, the *Browning* Court clarified that it was not the basis for the holding in *Kaperonis*.

In fact, further proof that this Court has not yet addressed the issue of whether N.C.G.S. § 47-27 applied to DOT prior to the 1 July 1959 amendment can be found in *N.C. State Highway Comm'n v. Nuckles*, 271 N.C. 1, 155 S.E.2d 772 (1967), which was decided four years after *Kaperonis*. In *Nuckles*, we dismissed the State Highway Commission's appeal, including the issue of whether an unrecorded right-of-way agreement executed in 1946 was valid against a bona fide purchaser for value. *Id.* at 15, 155 S.E.2d at 784. In dismissing the appeal, Justice Sharp stated for the Court:

> The dismissal of plaintiff's appeal also makes it unnecessary to decide (1) whether G.S. 47-27 applied to the State Highway Commission prior to its 1 July 1959 amendment, or (2)—if it did—what the effect of Exhibit 9 would have been had it been recorded. G.S. 47-27 makes deeds and conveyances of easements and rights-of-way invalid as to creditors and purchasers for value prior to recordation. The amendment involved makes this section expressly applicable to the Highway Commission. The first question was debated in the briefs. Plaintiff contends that before 1 July 1959 it was not required to register any deed or agreement for a right-of-way or easement. Defendants contend that, by the amendment, the legislature merely made explicit that which was already implicit in the statute and was attempting to force the Highway Commission to comply with the registration laws. . . . Plaintiff cites *Browning v. Highway Commission*, [263 N.C. 130, 139 S.E.2d 227]; *Kaperonis v. Highway Commission*, [260 N.C. 587, 133 S.E.2d 464]; *Yancey v. Highway Commission*, 222 N.C. 106, 22 S.E.2d 256 [(1942)]. Defendants cite, *inter alia, Williams v. Board of Education*, 266 N.C. 761, 147 S.E.2d 381 [(1966)]; *Best v. Utley*, 189 N.C. 356, 127 S.E. 337 [(1925)]; *Collins v. Davis*, 132 N.C. 106, 43 S.E. 579 [(1903)]. Suffice it to say, no decision determinative of the question has been called to our attention.

*Nuckles*, 271 N.C. at 15-16, 155 S.E.2d at 784-85. Accordingly, we overrule the Court of Appeals' decision in *Auten* to the extent that it holds that N.C.G.S. § 47-27 does not require DOT to record deeds of easement or other agreements conveying interests in land executed prior to 1 July 1959 in order to be valid against bona fide purchasers for

value. Whether N.C.G.S. § 47-27 applied to the State Highway Commission prior to the 1 July 1959 amendment is an issue of first impression for this Court.

The statutory scheme for recordation of real estate transactions in North Carolina, which is now generally known as the Conner Act, was originally enacted in 1885. 1 James A. Webster, Jr., *Webster's Real Estate Law in North Carolina* § 17-1, at 699 (Patrick K. Hetrick & James B. McLaughlin, Jr., eds., 4th ed. 1994). Unlike the laws of most states, North Carolina's recordation statutes are characterized as "pure race" statutes. The effect of a "pure race" statute is to protect any purchaser for value who records first, whether or not he has notice of a prior unrecorded conveyance and whether he is a prior or subsequent purchaser. *Id.* § 17-2, at 700. As stated in *Webster's*, "[i]f a conveyance is not recorded, it is considered void as against prior or subsequent purchasers of the same property for value who record first." *Id.* § 17-2, at 703.

The purpose of these laws is to provide certainty in real estate transactions, for the benefit of purchasers and lenders. As this Court has previously stated:

> The examiner of a real estate title by his search of the records seeks to determine if the grantors in the chain of title were seized of a marketable title, free of all taxes, liens or encumbrances, at the time such grantor made or intends to make the conveyance. In making such examination he is entitled to rely with safety upon an examination of the records and act upon the assurances against all persons claiming under the grantor that what did not appear did not exist.

*Hughes v. N.C. State Highway Comm'n*, 275 N.C. 121, 130-31, 165 S.E.2d 321, 327 (1969).

The statute in question here, codified now as N.C.G.S. § 47-27, was enacted in 1917 and provided, in pertinent part:

> [A]ll persons, firms, or corporations now owning or hereafter acquiring any deed or agreement for rights of way and easements of any character whatsoever shall . . . record such deeds and agreements in the office of the register of deeds of the county where the land affected is situated.

Gregory's Revisal Biennial 1917 of N.C. § 986A, at 984, para. 1. The statute then set out the specific process for proper recordation of the

instruments held by persons, firms, or corporations. The statute also specifically enumerated the classes of instruments and conveyances which were not required to be registered:

(1) It shall not apply to any deed or instrument executed prior to January first, one thousand nine hundred and ten.

(2) It shall not apply to any deed or instrument so defectively executed or witnessed that it cannot by law be admitted to probate or registration, provided that such deed or instrument was executed prior to the ratification of this act.

(3) It shall not apply to decrees of a competent court awarding condemnation or confirming reports of commissioners, when such decrees are on record in such courts.

(4) It shall not apply to local telephone companies, operating exclusively within the State, or to agreements about alley-ways.

*Id.* para. 2. While this statute set out the procedures for recording "any deed or agreement for rights of way and easements of any character whatsoever," as well as the penalty for noncompliance, it did not address the effect that nonrecordation would have against bona fide purchasers for value.

In 1943, the General Assembly amended the statute. The most significant aspect of the amendment required *all* easements, deeds, and right-of-way agreements to be recorded in order to have effect against bona fide purchasers for valuable consideration. The final paragraph of N.C.G.S. § 47-27, added in 1943, provided as follows:

No deed, agreement for right of way, or easement of any character shall be valid as against any creditor or purchaser for a valuable consideration but from the registration thereof within the county where the land affected thereby lies.

N.C.G.S. § 47-27, para. 4 (1943). It therefore appears that the General Assembly intended N.C.G.S. § 47-27 to operate under the same theory as the Conner Act—as a "pure race" statute. As noted above, a "pure race" statute protects any purchaser for value who records first, regardless of notice. Thus, the effect of the 1943 amendment was to require that any "deed, agreement for right of way, or easement of any character" be registered before it could be valid against a bona fide purchaser for value.

It is also important to note that the 1943 amendment did not change the exceptions previously listed in the original statute. With regard to statutory construction, this Court has stated that "the exclusion of a particular circumstance from a statute's general operation is evidence of legislative intent not to exempt other particular circumstances not expressly excluded." *Batten v. N.C. Dep't of Correction*, 326 N.C. 338, 344-45, 389 S.E.2d 35, 39 (1990), *disapproved of on other grounds by Empire Power Co. v. N.C. Dep't of Env't, Health & Natural Resources*, 337 N.C. 569, 447 S.E.2d 768 (1994). Pursuant to the principles of statutory construction, had the General Assembly intended to make unrecorded DOT right-of-way agreements valid against bona fide purchasers for value, it would have expressly exempted such agreements.

In 1959, the General Assembly again modified N.C.G.S. § 47-27 by adding the following additional paragraph:

From and after July 1, 1959 the provisions of this section shall apply to require the State Highway Commission to record as herein provided any deeds of easement, or any other agreements granting or conveying an interest in land which are executed on or after July 1, 1959, in the same manner and to the same extent that individuals, firms or corporations are required to record such easements.

N.C.G.S. § 47-27, para. 5 (Supp. 1965). This amendment speaks solely to the process by which DOT is required to record. Apparently, the General Assembly realized that under the 1943 statute, it was not clear how DOT was to record the instruments. The 1943 statute provided the process by which "persons, firms, or corporations" were required to record, but did not refer to DOT. The above amendment specifically provides that after 1 July 1959, DOT is required to record "any deeds of easement, or any other agreements granting or conveying an interest in land . . . *in the same manner and to the same extent* that individuals, firms or corporations are required to record such easements." *Id.* (emphasis added). This language in the 1959 amendment obviously refers back to the first paragraph of N.C.G.S. § 47-27, which provides the procedure for registration that is required of "persons, firms, or corporations."

However, this amendment does not change in any way the validity of DOT right-of-way agreements executed prior to 1 July 1959 as to purchasers for valuable consideration. In the present case, the parties have stipulated that defendants were bona fide purchasers for

value. Thus, in order for a right-of-way agreement to be valid against them, the 1943 amendment requires that it be recorded. Accordingly, the unrecorded right-of-way agreement in the present case does not entitle DOT to the claimed right-of-way.

In concluding that DOT right-of-way agreements were required to be recorded in order to prevail over a bona fide purchaser for value prior to the 1959 amendment, we are upholding the stated purpose of our recordation statutes and the established principles of statutory construction. Interpreting N.C.G.S. § 47-27 to grant validity to an unrecorded right-of-way, not excepted by the statute, against a bona fide purchaser for value would create precisely the confusion and inequities in land ownership that the Conner Act was intended to protect against. As a "pure race" state, North Carolina focuses on recordation, above and beyond anything else. If the General Assembly had intended for DOT to be exempt from filing, it could have included it in the exclusions listed in the statute.

In enacting the 1959 amendment, it appears that the General Assembly merely sought to clarify the process by which DOT was required to record. In the present case, we hold that N.C.G.S. § 47-27 applied to DOT prior to the 1959 amendment. Accordingly, we reverse the order of the Superior Court granting DOT "a right of way across defendants' subject tract 75 feet in width from the centerline of N.C. 150." This case is remanded to Superior Court, Gaston County, for further proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.