NICK OCHSNER, Plaintiff v. ELON UNIVERSITY and NORTH CAROLINA
ATTORNEY GENERAL ROY COOPER, Defendants

No. COA11-1571

(Filed 5 June 2012)

### 1. Public Records—Campus Police Department—Elon University —not subject to North Carolina Public Records Act

The trial court did not err in a case involving a television station's public records request by granting defendant Elon University's motion to dismiss for failure to state a claim upon which relief could be granted. The Campus Police Department at Elon University, which is a private university, is not subject to the North Carolina Public Records Act.

### 2. Public Records—Attorney General—not custodian of arrest records—Campus Police Department—Elon University

The trial court did not err in a case involving a television station's public records request by granting defendant Attorney General's Rule 12(b)(6) motion to dismiss. The Attorney General is not the custodian of arrest records maintained by the Elon Campus Police Department pursuant to N.C.G.S. § 74G-5.

Appeal by plaintiff from orders entered 1 August 2011 by Judge Michael O'Foghludha in Alamance County Superior Court. Heard in the Court of Appeals 5 April 2012.

*Perkinson Law Firm, by Ashley Matlock Perkinson, for the plaintiff.*

*Womble Carlyle Sandridge & Rice, LLP, by Christopher W. Jones, Beth Tyner Jones, and Amanda G. Ray, for Defendant Elon University, and David L. Elliott and Brian C. Tarr for Defendant Attorney General Roy Cooper.*

*Smith Moore Leatherwood, LLP, by Fred P. Baggett, for North Carolina Association of Chiefs of Police, Edmond W. Caldwell, Jr., and Julie B Smith, for North Carolina Sheriffs' Association, and Teague Campbell Dennis & Gorham, LLP, by Henry W. Gorham and Leslie Lasher, for North Carolina Association of Campus Law Enforcement Administrators, Amici Curiae.*

THIGPEN, Judge.

OCHSNER v. ELON UNIV.

[221 N.C. App. 167 (2012)]

Nick Ochsner ("Plaintiff") appeals from orders dismissing Plaintiff's complaint on the N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) motions of Elon University ("Defendant Elon University") and the Office of the North Carolina Attorney General ("Defendant Attorney General") (together, "Defendants"), contending the trial court erred as a matter of law. We affirm the orders of the trial court.

The record tends to show the following: In 2010, Plaintiff was a student at Elon University, majoring in broadcast journalism, and a student reporter for Phoenix14News, the University's student television news program. On 5 March 2010, an Elon University student named Stephen Connors ("Connors") was arrested by Elon University Campus Police Department ("the Department"). Plaintiff spoke with the Department about the arrest, and the Department provided to Plaintiff the Arrest Report and the first page of the Incident Report. On 8 March 2010, Plaintiff wrote a letter to the Department requesting the complete Incident Report for Connor's arrest pursuant to the North Carolina Public Records Law. Plaintiff's letter to the Department stated, in pertinent part, the following:

Chief Gantos,

Thank you for taking the time to talk to me today and provide me with the front pages of the Incident/Investigation Report regarding an arrest made by an officer with the Elon Campus Police Department. . . .

I would like to formally request that Elon Campus Police provide Phoenix14News with a copy of "Incident Report 2010-0017" in its entirety. The document that I am requesting qualifies as a public record under North Carolina law because it reports the following:

1.  "The time; date, location, and nature of a violation or apparent violation of the law reported to a public law enforcement agency."

2.  "The name, sex, age, address, employment, and alleged violation of law of a person arrested, charged, or indicted."

3.  "The circumstances surrounding an arrest, including the time and place of the arrest, whether the arrest involved resistance, possession or use of weapons, or pursuit, and a description of any items seized in connection with the arrest."

North Carolina's public records law, Chapter 132 of the General Statutes, provides for public inspection and copying of most records made or received by state or local governments and their

subdivisions, regardless of the physical form of the record. If you contend that the document I have asked for is not a public record, please advise me of the specific authority for that position.

The Elon Campus Police Department is subject to the Public Records Law because Chapter 132-1.4(b)(3) defines "public law enforcement agencies" as all law enforcement agencies commissioned by the state attorney general. Thus, the law covers police departments at private colleges and universities as well as those at state colleges and universities.

Thank you for your time and attention to this matter. Hopefully we will be able to resolve this matter and find a way to guarantee full access to these public records in the future. I look forward to hearing from you. . . .

Nick Ochsner
Phoenix 14News

The University's Campus Police Department did not provide Plaintiff with the complete Incident Report 2010-0017.

On 20 December 2010, Plaintiff's attorney, Ashley Perkinson ("Perkinson"), wrote a letter to Defendant Attorney General requesting "all records related to Mr. Connor's arrest in March 2010, including . . . the Incident Report[.]" On 5 January 2010, Defendant Attorney General replied to Perkinson, stating that the Office of the Attorney General was "not in possession of the information that you have requested" and therefore was "unable to assist you with this request." Defendant Attorney General explained:

The records maintained by the Campus Police Administrator on behalf of the North Carolina Department of Justice—Campus Police Program, pursuant to [N.C. Gen. Stat. §] 74G-5, are campus police agency certification files and campus police officer commission files. These files typically include items related to the commission or certification application process. The type of information that you are requesting is generally not provided to the Campus Police Program. Instead, records of calls for service, arrest reports and reports of investigation are the responsibility of each company or campus police agency.

On 11 February 2011, Perkinson again wrote Defendant Attorney General, stating, "we are hopeful that you can steer Elon Campus Police back into compliance with the Public Records Law[,]" and "we

believe it is appropriate for you to either produce the requested information or to direct authorized campus police departments to comply with the public records law and produce the requested information."

On 13 April 2011, Plaintiff filed a complaint in Alamance County Superior Court alleging that Defendant Elon University and Defendant Attorney General violated the North Carolina Public Records Law by refusing to provide to Plaintiff the documents related to Connor's arrest. Defendants filed N.C. Gen. Stat. 1A-1, Rule 12(b)(6) motions to dismiss Plaintiff's complaint, and on 1 August 2011, the trial court entered orders granting Defendants' motions to dismiss. From these orders, Plaintiff appeals.

I: Standard of Review

"On a motion to dismiss pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure, the standard of review is whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory." *Stunzi v. Medlin Motors, Inc.*, ____ N.C. App. ____, ____, 714 S.E.2d 770, 773 (2011) (quotation omitted). "The complaint must be liberally construed, and the court should not dismiss the complaint unless it appears beyond a doubt that the plaintiff could not prove any set of facts to support his claim which would entitle him to relief." *Id.* (quotation omitted). Dismissal under Rule 12(b)(6) is proper when one of the following three conditions is satisfied: "(1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim." *Id.* at ____, 714 S.E.2d at 773-74 (quotation omitted).

In Plaintiff's complaint, he made the following pertinent allegations:

4.    On March 5, 2010, Stephen Connors, an Elon University student, was arrested by the University's Campus Police Department.

5.    Shortly thereafter, Mr. Ochsner requested police records related to the arrest of Mr. Connors and pursuant to the North Carolina Public Records law. Mr. Ochsner's public records request is attached hereto as Attachment 1.

6.  Pursuant to the North Carolina Public Records Law, Mr. Ochsner requested that the following information regarding the Connors arrest be provided:

    1.  The time, date, location, and nature of a violation or apparent violation of the law reported to a public law enforcement agency.

    2.  The name, sex, age, address, employment, and alleged violation of law of a person arrested, charged, or indicted.

    3.  The circumstances surrounding an arrest, including the time and place of the arrest, whether the arrest involved resistance, possession or use of weapons, or pursuit, and a description of any items seized in connection with the arrest.

7.  The University's Campus Police Department denied Mr. Ochsner's original request and subsequent requests. The only information provided to Mr. Ochsner about this incident are the documents attached hereto as Attachment 2.[1] These documents provide minimal information.

8.  Counsel for Mr. Ochsner made requests to counsel for the University for police records relating to the arrest of Mr. Connors, but those requests were also denied.

9.  Counsel for Mr. Ochsner made a public records request to the North Carolina Attorney General's office for the police records pursuant to North Carolina Gen. Stat. § 74G which states "[t]he Attorney General is the legal custodian of all books, papers, documents, or other records and property of the Campus Police Program." The Attorney General's office denied the request on January 5, 2011, and stated that it did not have possession of the information requested. The January 5, 2011 letter is attached as Attachment 3.

10. Mr. Ochsner brings forth this lawsuit on the basis that private university campus police programs must be required to provide certain basic information regarding a criminal incident to the public.

---

1. The only documents attached to Plaintiff's complaint in the record on appeal are Plaintiff's 8 March 2010 letter to Chief Gantos, the Arrest Report, the first page of the Incident/Investigation Report, and Perkinson's 5 January 2011 letter to the Office of the North Carolina Attorney General.

First Claim for Relief
Violation of the North Carolina Public
Records Law

1. Paragraphs 1 through 9 are realleged and incorporated herein by reference.

2. Elon University's refusal and the North Carolina Attorney General's refusal to provide police records related to the Connors arrest violate[] the North Carolina Public Records law.

WHEREFORE, plaintiff prays the Court that a judgment be entered as follows:

1. In favor of plaintiff against defendants Elon University and the North Carolina Attorney General for violation of the North Carolina Public Records Law as well as all applicable fees, costs, and attorneys' fees allowed by law.

2. To mandate that Elon University and the North Carolina Attorney General provide plaintiff with documents related to the Connors arrest as described in this Complaint.

3. For such other and further relief as the Court deems just and proper.

In the trial court's order granting Defendant Elon University's Rule 12(b)(6) motion to dismiss, the trial court stated the following:

the Court finds that the Complaint fails to state a colorable claim for violation of the North Carolina Public Records Act, and that Defendant Elon University did not violate the North Carolina Public Records Act by producing to Plaintiff only the subject arrest report and first page of the investigation/incident report. On that basis, the Court, hereby ORDERS, ADJUDGES and DECREES that Plaintiff's Complaint be DISMISSED, WITH PREJUDICE.

The trial court stated the following in its separate order on Defendant Attorney General's motion to dismiss: "[I]t appears to the Court that, pursuant to N.C.G.S. § 74G-5, the Attorney General is not the custodian of arrest records maintained by the Elon Campus Police Department. IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the above-entitled action is dismissed."

II:  Elon University

**[1]**  In Plaintiff's first argument on appeal, he contends the trial court erred in granting Defendant Elon University's Rule 12(b)(6) motion to dismiss because N.C. Gen. Stat. § 132-1 (2011) requires that Defendant Elon University "produce those records that are deemed public pursuant to the public records law." In considering whether Plaintiff's complaint in this case should have survived Defendant Elon University's Rule 12(b)(6) motion, we believe the preliminary question is whether Defendant Elon University, a private university, is subject to the North Carolina Public Records Act. We conclude Defendant Elon University is not subject to the North Carolina Public Records Act and that the trial court did not err in granting Defendant Elon University's Rule 12(b)(6) motion to dismiss.

"Access to public records in North Carolina is governed generally by our Public Records Act, codified as Chapter 132 of the North Carolina General Statutes. Chapter 132 provides for liberal access to public records." *In re Search Warrants Issued in Connection with the Investigation into the Death of Nancy Cooper*, 200 N.C. App. 180, 186, 683 S.E.2d 418, 423 (2009), *disc. review denied*, 363 N.C. 855, 694 S.E.2d 201 (2010) (quotation omitted). "The Public Records Act permits public access to all public records in an agency's possession *unless* either the agency or the record is specifically exempted from the statute's mandate." *Id.* (quotation omitted) (emphasis in original).

N.C. Gen. Stat. § 132-1 defines "public record":

> [A]ll documents, papers, letters, maps, books, photographs, films, sound recordings, magnetic or other tapes, electronic data-processing records, artifacts, or other documentary material, regardless of physical form or characteristics, made or received pursuant to law or ordinance in connection with the transaction of public business by any agency of North Carolina government or its subdivisions. Agency of North Carolina government or its subdivisions shall mean and include every public office, public officer or official (State or local, elected or appointed), institution, board, commission, 'bureau, council, department, authority or other unit of government of the State or of any county, unit, special district or other political subdivision of government.

*Id.* N.C. Gen. Stat. § 132-1.4(a) (2011), provides that "[r]ecords of criminal investigations conducted by public law enforcement agencies . . . are not public records as defined by G.S. 132-1." *Id.* N.C. Gen.

Stat. § 132-1.4(b)(1) (2011), defines "[r]ecords of criminal investigations" as "all records or any information that pertains to a person or group of persons that is compiled by public law enforcement agencies for the purpose of attempting to prevent or solve violations of the law, including information derived from witnesses, laboratory tests, surveillance, investigators, confidential informants, photographs, and measurements." *Id.* N.C. Gen. Stat. § 132-1.4(b)(3) (2011), states that "[p]ublic law enforcement agency" means "a municipal police department, a county police department, a sheriff's department, a company police agency commissioned by the Attorney General pursuant to G.S. 74E-1, et seq., and any State or local agency, force, department, or unit responsible for investigating, preventing, or solving violations of the law." *Id.*

In this case, in order to determine whether Plaintiff has alleged a colorable claim, we must interpret the provisions of the Public Records Act. *See Burgess v. Your House of Raleigh, Inc.*, 326 N.C. 205, 209, 388 S.E.2d 134, 136 (1990) (interpreting the Handicapped Persons Act to determine whether the plaintiff's complaint survived a Rule 12(b)(6) motion). Specifically, we must determine whether the Elon University Campus Police Department is a "[p]ublic law enforcement agency" pursuant to N.C. Gen. Stat. § 132-1.4(b)(3).

"Where the language of a statute is clear and unambiguous, there is no room for judicial construction and the courts must construe the statute using its plain meaning[,] . . . [b]ut where a statute is ambiguous, judicial construction must be used to ascertain the legislative will." *Burgess*, 326 N.C. at 209, 388 S.E.2d at 136-37 (citations omitted). "The primary rule of construction of a statute is to ascertain the intent of the legislature and to carry out such intention to the fullest extent[;] . . . [t]his intent must be found from the language of the act, its legislative history and the circumstances surrounding its adoption which throw light upon the evil sought to be remedied." *Id.* at 209, 388 S.E.2d at 137 (quotation omitted).

Here, N.C. Gen. Stat. § 132-1.4(b)(3) is clear and unambiguous, and it limits the definition of "[p]ublic law enforcement agency" to the following: "a municipal police department, a county police department, a sheriff's department, a company police agency commissioned by the Attorney General pursuant to G.S. 74E-1, et seq., and any State or local agency, force, department, or unit responsible for investigating, preventing, or solving violations of the law." *Id.* Campus police departments, which are agencies certified pursuant to

OCHSNER v. ELON UNIV.

[221 N.C. App. 167 (2012)]

the Campus Police Act, N.C. Gen. Stat. § 74G-1 (2011), *et seq.*,[2] are not enumerated in the list of departments and agencies qualifying as a "[p]ublic law enforcement agency[.]" We believe if the legislature had intended for campus police departments to be subject to the Public Records Act, it could have listed campus police departments as public law enforcement agencies. *See In re Foreclosure of a Deed of Trust Executed by Bradburn*, 199 N.C. App. 549, 552, 681 S.E.2d 828, 830 (2009), *disc. review denied*, 363 N.C. 803, 690 S.E.2d 531 (2010) (stating, "had the General Assembly intended to impose the same penalty it did in the CFA, it could have included language in the MLA leading to the same result"); *DOT v. Humphries*, 347 N.C. 649, 656, 496 S.E.2d 563, 567 (1998) (stating, "had the General Assembly intended to make unrecorded DOT right-of-way agreements valid against bona fide purchasers for value, it would have expressly exempted such agreements"). Therefore, we conclude the Campus Police Department at Elon University, which is a private university, is not subject to the North Carolina Public Records Act, and the dismissal of Plaintiff's complaint against Defendant Elon University pursuant to Rule 12(b)(6) was proper, as "the complaint on its face reveals that no law supports the plaintiff's claim" that Defendant Elon University violated the Public Records Act. *Medlin Motors, Inc.*, ____ N.C. App. at ____, 714 S.E.2d at 773-74.

### III: Office of the Attorney General

[2] In Defendant's second argument on appeal, he contends the trial court erred in granting Defendant Attorney General's Rule 12(b)(6) motion to dismiss because Defendant Attorney General is the "custodian of arrest records maintained by the Elon Campus Police

2. The Campus Police Act became effective in 2005. Prior to the enactment of the Campus Police Act, campus law enforcement agencies were certified pursuant to the Company Police Act, N.C. Gen. Stat. § 74E-1, *et. seq.* However, 2005 N.C. Sess. Laws, ch. 231, § 12, states that "[w]hen [the Campus Police Act] becomes law, all certificates issued to police agencies at private institutions of higher education and commissions issued to their police officers pursuant to Chapter 74E of the General Statutes shall automatically convert to certification and commissions issued pursuant to this act and shall be administered in conformity with this act. Notwithstanding any of the provisions of Chapter 74G of the General Statutes, as enacted by this act, or the provisions of Chapter 74E of the General Statutes, the board of trustees of any educational institution that, on the effective date of this act, has a company police agency licensed pursuant to Chapter 74E of the General Statutes, may elect to continue to have its officers certified under Chapter 74E of the General Statutes rather than pursuant to Chapter 74G of the General Statutes, as enacted by this act, by making a written request to the Attorney General no later than October 1, 2005." There is no evidence of record or argument by the parties that the board of trustees for Elon University elected to continue its officers' certification pursuant to the Company Police Act.

Department" pursuant to N.C. Gen. Stat. § 74G-5. We find this argument without merit.

N.C. Gen. Stat. § 74G-5, which is part of the Campus Police Act, provides the following:

> (a) The Attorney General is the legal custodian of all books, papers, documents, or other records and property of the Campus Police Program.

> (b) Any papers, documents, or other records that become the property of the Campus Police Program and are placed in a campus police officer's personnel file maintained by the Attorney General are subject to the same restrictions concerning disclosure as set forth in Chapters 126, 153A, and 160A of the General Statutes for other personnel records.

> (c) Notwithstanding the provisions of subsection (b) of this section, the Attorney General may disclose the contents of any records maintained under the authority of this Chapter to the Criminal Justice Education and Training Standards Commission, the Sheriff's Education and Training Standards Commission, or any other criminal justice agency for certification or employment purposes.

Papers, documents, and records filed with the Office of the Attorney General and fees paid to the Office of the Attorney General pursuant to the Campus Police Act include the following: (1) "either a copy of a liability insurance policy[,] . . . or a certificate of self-insurance designating assets sufficient to satisfy the coverage requirements of this section[,]" N.C. Gen. Stat. § 74G-3(a) (2011); (2) a fee with an application for certification as a campus police agency, N.C. Gen. Stat. § 74G-12 (2011); (3) an annual renewal of certification as a campus police agency, *Id.*; (4) an application for reinstatement of certification as a campus police agency, *Id.*; (5) an application for commission as a campus police officer, *Id.*; (6) an annual renewal of commission as a campus police officer, *Id.*; (7) or an application for reinstatement of commission as a campus police officer, *Id.* There are no provisions of the Campus Police Act referring to arrest reports or incident/investigation reports of the individual campus police departments. Moreover, N.C. Gen. Stat. § 74G-5(b) refers to the "police officer's personnel file[,]" and N.C. Gen. Stat. § 74G-5(c) refers to police officer education, training, certification, and employment. Defendant Attorney General admitted in its answer to Plaintiff's complaint that

"pursuant to N.C. Gen. Stat. § 74G-5, the Attorney General is the legal custodian of all books, papers, documents, or other records and property of the 'Campus Police Program.'" However, in the initial response letter to Perkinson, Defendant Attorney General stated that the records of the Campus Police Program include "campus police agency certification files and campus police officer commission files. These files typically include items related to the commission or certification application process[,]" but do not include arrest or incident/investigation reports. We agree with Defendant Attorney General's assessment of the requirements of N.C. Gen. Stat. § 74G-5(a). N.C. Gen. Stat. § 74G-5(a) requires that "[t]he Attorney General is the legal custodian of all books, papers, documents, or other records and property of the Campus Police Program." *Id.* However, we do not believe the General Assembly intended that the "books, papers, documents, or other records" of the "Campus Police Program" include the arrest or incident/investigation reports of every campus police department. Because Plaintiff relies on N.C. Gen. Stat. § 74G-5(a) in his complaint alleging the North Carolina Attorney General refused to provide police records related to Connors' arrest, and because N.C. Gen. Stat. § 74G-5(a) does not specifically charge the Attorney General with the custodianship of arrest or incident reports of campus police departments, we conclude Plaintiff's complaint on its face reveals that no law supports Plaintiff's claim. As such, we further conclude the trial court did not err in granting Defendant Attorney General's Rule 12(b)(6) motion to dismiss.

AFFIRMED.

Judges HUNTER and GEER concur.