IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-648

Filed 01 August 2023

Wake County, No. 21 CVS 4234

GREASEOUTLET.COM, LLC, Plaintiff,

v.

MK SOUTH II, LLC, Defendant.

Appeal by plaintiff from order entered 24 February 2022 by Judge Rebecca W. Holt in Wake County Superior Court. Heard in the Court of Appeals 22 February 2023.

> *Brooks, Pierce, McLendon, Humphrey & Leonard, LLP, by Gary S. Parsons and Sarah M. Saint, for Plaintiff-Appellant.*
>
> *Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, LLP, by Scott A. Miskimon and Jang H. Jo, for Defendant-Appellee.*

DILLON, Judge.

Plaintiff appeals from an order granting Defendant's motion to dismiss all claims alleged in Plaintiff's complaint pursuant to Rule 12(b)(6). We affirm.

## I. Standard of Review

We review a trial court's dismissal pursuant to Rule 12(b)(6) *de novo*, deciding whether the allegations of the complaint, treated as true, state a claim upon which relief can be granted. *Sykes v. Health Network*, 372 N.C. 326, 332, 828 S.E.2d 467, 471 (2019). Dismissal under Rule 12(b)(6) is proper when the complaint on its face reveals either that no law supports the plaintiff's claim, the absence of facts sufficient to make

a good claim, or some fact that necessarily defeats the plaintiff's claim. *Wood v. Guilford County*, 355 N.C. 161, 166, 558 S.E.2d 490, 494 (2002).

## II. Background

This appeal concerns a dispute between a landlord and its tenant over whether the landlord must honor the commercial lease amendment entered into by the tenant with the landlord's predecessor in title, including a provision granting the tenant options to renew. The allegations in Plaintiff's amended complaint show as follows:

Plaintiff Greaseoutlet.com, LLC, ("Tenant") operates an environmentally sensitive business, processing grease trap effluent generated by restaurants. To operate its business, Tenant must obtain certain permitting from the State.

In the Spring of 2016, Tenant entered into an agreement (the "Lease") to lease certain industrial property in Raleigh (the "Property") from the Property's then-owner ("Former Owner") for a term of five years, to expire on 30 April 2021. In August 2021, a memorandum executed by Former Owner that outlined certain Lease provisions, including that the term was for five years, was recorded in the Wake County Registry.

Four months later, in December 2016, Tenant and Former Owner entered an agreement amending certain provisions of the Lease (the "Amendment"). This Amendment contained a provision granting Tenant the option to renew the Lease term past 30 April 2021 for two successive five-year terms. However, no new memorandum regarding this Amendment was recorded in the Wake County Registry.

In December 2018, Tenant secured the necessary State permit to continue operating its business on the Property through 30 April 2021, coinciding with the original Lease term. As part of Tenant's permit application, Former Owner signed a landlord authorization form required by the State to issue the permit.

A year later, in December 2019, Former Owner sold the Property to Defendant MK South II, LLC, ("Current Owner"). Current Owner purchased the Property with plans to combine it with other properties for future redevelopment. Prior to purchasing the Property, Current Owner conducted due diligence. During the due diligence period, Current Owner received a copy of the Lease and of the Amendment. Also, during the due diligence period, Tenant signed a tenant estoppel certificate (the "Estoppel Certificate") directed to Current Owner, acknowledging, among other things, that it was currently a tenant under a lease, that neither it nor Former Owner were in default, and that it had not prepaid any rent to Former Owner.

In early 2020, Current Owner told Tenant that Tenant needed to vacate the Property at the end of the current five-year term, ending in April 2021. Tenant essentially responded that it would be too expensive to move its business.

In August 2020, Tenant notified Current Owner that it was exercising its option (as contained in the unregistered Amendment) to renew the lease for a new five-year term, to begin on 1 May 2021. In October 2020, Tenant sent a check, prepaying the rent for all of 2021, which included rent for the last four months of the initial term and the first eight months of the new term. Current Owner deposited the check. During

this time, however, Current Owner was working towards gaining approvals to repurpose its assembled tracts, including the Property, for redevelopment, gaining rezoning approval in December 2020. Also, in November 2020, when Tenant asked Current Owner to sign a new landlord authorization required as part of Tenant's application with the State to renew Tenant's permit to operate its business beyond April 2021, Current Owner refused to sign. Instead, the parties discussed an extension of Tenant's leasehold beyond April 2021. In January 2021, Current Owner notified Tenant it would sign the landlord authorization required for Tenant's permit renewal and agree to allow Tenant to extend its leasehold for five years (through April 2026) *if* Tenant agreed that Landlord could unilaterally terminate the Lease after two years into the renewal term (April 2023). Tenant refused this offer.

In March 2021, Current Owner notified Tenant that it did not consider itself bound by the Amendment and that Tenant's leasehold would terminate at the end of the next month (30 April 2021). Current Owner sent a check to reimburse Tenant for the prepaid rent for the last eight months of 2021. Tenant has not deposited or otherwise accepted this reimbursement. Rather, Tenant attempted to exercise its option to renew the Lease term as contained in the Amendment. However, Current Owner refused to honor Tenant's option as contained in the Amendment.

Tenant commenced this action against Current Owner, alleging six claims based on Current Owner's actions and inactions regarding the Lease and Amendment, including its failure to honor Tenant's right to renew the lease term.

In February 2022, after a hearing on the matter, the trial court granted Current Owner's Rule 12(b)(6) motion to dismiss Tenant's claims. Tenant appeals.

### III. Analysis

Tenant's arguments on appeal turn on whether Current Owner's fee simple interest is subject to Tenant's leasehold interests beyond April 2021.

Specifically, in the Spring of 2016, Tenant acquired a leasehold interest in the Property ending in April 2021 when Former Owner executed the Lease. In December 2021, Tenant acquired a new interest in the Property, specifically the option to extend its leasehold beyond April 2021 for two five-year terms when Former Owner executed the Amendment.[1]

Three years later, in December 2019, Current Owner acquired a fee simple interest in the Property when Former Owner executed a deed conveying the same to Current Owner. This deed did not contain any language stating that Current Owner's fee simple interest was subject to Tenant's leasehold interest. However, though Current Owner's deed was immediately registered, Current Owner concedes its fee simple interest was subject to Tenant's leasehold interest through April 2021, based on the prior recorded Memorandum. On appeal, Tenant makes several arguments as to

---

[1] Whether the options to renew granted to Tenant in the Memorandum was supported by consideration from Tenant is not before us. *See, e.g.*, *Barnes v. Saleeby*, 177 N.C. 256, 260, 98 S.E. 708, 710 (1919) ("An option *in the original lease* to renew would not be without consideration, but a promise *during the lease [term]* to give the tenant such option [without separate consideration] is without consideration[.]" (Emphasis added.)).

why Current Owner's fee simple interest is also subject to its leasehold renewal interest, which we address in turn.

## A. Connor Act

Tenant argues that Current Owner's interest is subject to its leasehold renewal interest contained in the Amendment because the registered Memorandum complied with the Connor Act in providing record notice of the Amendment, notwithstanding that the Memorandum was filed four months prior to the date of the Amendment. For the reasoning below, we disagree.

Prior to 1829, North Carolina was essentially a notice state, such that any "unregistered incumbrance would be upheld . . . against a subsequent registered incumbrance or conveyance with notice of the former[.]" *Robinson v. Willoughby*, 70 N.C. 358, 363 (1874). In 1829, our General Assembly passed the predecessor to Section 47-20, declaring "no deed in trust or mortgage . . . shall be valid at law to pass any property as against creditors and purchasers for a valuable consideration." *Id.* Accordingly, the interest of a subsequent purchaser for value of property is not subject to a prior, unregistered mortgage against that property, even if the subsequent purchaser had full knowledge of the prior, unregistered mortgage. *Id.* at 364 ("[N]o notice, however full or formal, will supply the want of registration.") The 1829 Act, however, only applied to unregistered mortgages and deeds of trust; North Carolina remained a notice state with respect to other prior, unregistered interests. *Id.*

In 1885, with the passage of the Connor Act, now codified as N.C. Gen. Stat. §

47-18, our General Assembly made North Carolina a "pure race" state with respect to most other real estate interests. *See DOT v. Humphries*, 347 N.C. 649, 657, 496 S.E.2d 563, 567 (1998) (describing North Carolina as a "'pure race' state"). The Connor Act was named for its sponsor, Senator Henry Groves Connor[2], later a member of our Supreme Court. While serving on our Supreme Court, Justice Connor explained that the purpose of the Act was to make land titles more certain:

> The purpose of the statute was to enable purchasers to rely with safety upon the examination of the records, and act upon the assurance that, as against all persons claiming under the "donor, bargainor, or lessor," what did not appear did not exist. That hardship would come to some in applying the rigid statutory rule was well known and duly considered. . . .
>
> The change in our registration laws was demanded by the distressing uncertainty into which the title to land had fallen in this State. . . .
>
> If the [holder of an unrecorded interest] has sustained injury [because his interest with the prior owner should have been recorded], it is to be regretted, but it is not the fault of the law. Its protective provisions are clear and explicit. To permit him to disregard it at the expense of the [subsequent purchaser] who has obeyed it would be to seriously impair the value of the statute and return to many of the evils which its enactment sought to remove.

*Wood v. Tinsley*, 138 N.C. 507, 515, 51 S.E. 59, 62 (1905). Accordingly, as with

---

[2] In referring to the Connor Act, our Supreme Court and our Court have occasionally misspelled the Senator's when referring to the Act, as "Conner". *See, e.g., DOT v. Humphries*, 347 N.C. 649, 654, 496 S.E.2d 563, 566 (1998); *Hornets Nest v. Cannon*, 79 N.C. App. 187, 193, 339 S.E.2d 26, 30 (1986). The authoring judge here recently used both spellings to refer to the Act in the same paragraph of an opinion. *Benson v. Prevost*, 277 N.C. App. 405, 417, 861 S.E.2d 343, 351 (2021).

unregistered deeds of trust and mortgages under the 1829 Act, the Connor Act affirms the principle that "[a]ctual knowledge, however full and formal, of a grantee in a registered deed of a prior unregistered deed or [long-term] lease will not defeat his title as a purchaser for value in the absence of fraud or matters creating estoppel." *Bourne v. Lay & Co.*, 264 N.C. 33, 35, 140 S.E.2d 769, 771 (1965).

The Connor Act does not require all leasehold interests to be registered in order to have priority over the interests of a subsequent purchaser for value. Rather, the Connor Act only requires a leasehold interest for more than three years to be registered. N.C. Gen. Stat. § 47-18(a) (Connor Act applies to a "lease of land for more than three years"). *See Perkins v. Langdon*, 237 N.C. 159, 165-66, 74 S.E.2d 634, 640 (1953) (purchaser takes subject to short-term lease when it had knowledge of the lease or if circumstances put the purchaser on inquiry notice regarding the lease's existence).

For instance, in *Bourne*, our Supreme Court held that purchasers with actual knowledge of an existing five-year lease were not bound by its terms, including the term granting the tenant an option to renew its leasehold for five years, where the lease was not registered. *Bourne*, 264 N.C. at 35, 140 S.E.2d at 771 (recognizing "[a] lease for more than three years must, to be enforceable, be in writing, and to protect it against creditors or subsequent purchasers for value, the lease must be recorded"). The Court explained in a later case that a new owner of real estate was not bound by the existing tenant's unregistered lease containing options to renew for five years:

> [Plaintiff] recorded her deed [in 1979], and the defendant

> recorded its options to renew the lease [in 1980]. It is well settled in this state that only actual prior recordation of an interest in land will serve to put a bona purchaser for value or a lien creditor on notice of an intervening interest or encumbrance on real property. Because defendant's lease was not recorded prior to the date on which plaintiff recorded her deed, plaintiff did not take subject to the lease. Therefore, [she] is entitled to possession, and summary ejectment should have been entered for the plaintiff.

*Simmons v. Quick-Stop*, 307 N.C. 33, 42, 296 S.E.2d 275, 281 (1982).[3]

It is sufficient under the Connor Act to register a memorandum, rather than the actual lease, so long as the memorandum recites the lease's key terms sufficient to put the world on record notice the extent of tenant's leasehold interest. N.C. Gen. Stat. § 47-118(a) (2021). Tenant contends that the Memorandum recorded four months before Former Owner executed the Amendment granting Tenant options to renew its leasehold beyond April 2021, nonetheless, satisfied the Connor Act with respect to the Amendment since the Memorandum refers to any subsequent amendments to the Lease, stating in relevant part:

> This Memorandum of Lease . . . is of that certain Lease Agreement dated March 12, 2016 . . . by and between [Tenant and the Former Owner].
>
> . . . [Former Owner has leased] to Tenant [the Property] for a term that began on May 1, 2016 and continues until April 30, 2021, unless sooner terminated in accordance with the

---

[3] Our Court, likewise, has also recognized that a purchaser for value is not bound by an existing long-term lease that is not recorded. *New Bar v. Martin*, 221 N.C. App. 302, 316, 729 S.E.2d 675, 687-88 (2012) (purchaser with actual knowledge of an existing long-term unrecorded lease is not bound by its terms); *Purchase Nursery v. Edgerton*, 153 N.C. App. 156, 161, 568 S.E.2d 904, 907 (2002) (stating that a lease with a term of more than three years "must be recorded to be valid against a lien creditor or a third party purchaser for value[.]")

terms of the Lease.

> The provisions set for the in the Lease and *any amendments entered into by the parties subsequent to this Memorandum* between [the Current Owner] and Tenant are hereby incorporated into this Memorandum by reference.

> . . . Upon the expiration of the state[d] Lease term, this Memorandum shall automatically terminate.

(Emphasis added.)

We, however, conclude this Memorandum is insufficient to bind Current Owner beyond the initial term ending in April 2021. Our General Assembly requires that a memorandum of lease *shall* state the term of the lease, *including extensions/renewals*:

> (a) A lease of land . . . may be registered by registering a memorandum thereof which shall set forth:

>    * * *

>      (3) The term of the lease, including extensions, renewals options to purchase, if any;

>    * * *

> (b) If the provisions of the lease make it impossible or impractical to state the maximum period of the lease because of conditions, renewals and extensions, or otherwise, then the memorandum of the lease shall state in detail all provisions concerning the term of the lease as fully as set forth in the written lease agreement between the parties.

N.C. Gen. Stat. § 47-118(a)-(b).

Section 47-118 provides a form that may be used when drafting a memorandum

to be recorded, *see* N.C. Gen. Stat. § 47-118(a), but also allows for other forms to be used, provided they "are sufficient in law[,]" *see* N.C. Gen. Stat. § 47-117(a) (2021).

The recorded Memorandum in this case states the term of Tenant's leasehold interest expires on "April 30, 2021, unless sooner terminated in accordance with the terms of the Lease" and that "[u]pon the expiration of the *state[d] Lease term*, this Memorandum shall automatically terminate." (Emphasis added.) To protect its leasehold rights in the Property beyond April 2021 against subsequent recorded interests, Tenant should have caused a new memorandum to be registered. But it did not. The Memorandum recorded was not in a form "sufficient in law" to subject future purchasers to its leasehold interest beyond April 2021, as contained in the Amendment.

## B. Estoppel

Tenant argues that, even if the Memorandum was not sufficient under the Connor Act to protect its leasehold interests beyond April 2021, it has sufficiently alleged facts to support its contention that Current Owner is estopped from not honoring Tenant's said interests. Specifically, Tenant notes its allegation that "[o]n information and belief, the [written] purchase and sales contract . . . required [Current Owner] to assume all lease obligations owed to any tenants at the Property[.]" As explained more fully below, we conclude Tenant's estoppel fails because Tenant has not alleged that Current Owner's deed from Former Owner stated that Current Owner was taking subject to Tenant's unregistered leasehold interest beyond April 2021 or facts showing that the deed should be reformed to include such language.

Our Supreme Court has stated that "matters creating estoppel" may bind a subsequent purchaser to the terms of an existing, unrecorded [long-term] lease." *Bourne*, 264 N.C. at 35, 140 S.E.2d at 771. However, "matters of estoppel" refers to situations where a subsequent purchaser accepts a deed from the seller which contains language the purchaser is taking subject to an existing, unrecorded interest:

> When a grantee accepts the conveyance of real property subject to an outstanding claim or interest evidenced by an unrecorded instrument executed by the grantor, he takes the estate burdened by such claim or interest. By his acceptance of the deed, he ratifies the unrecorded instrument, agrees to stand seized subject thereto, and estops himself from asserting its invalidity.

*Dulin v. Williams*, 239 N.C. 33, 40, 79 S.E.2d 213, 218 (1953) (quoting *State Trust Co. v. Braznell*, 227 N.C. 211, 215, 41 S.E.2d 744, 747 (1947)). It is not enough for the deed to merely refer to the lease; for estoppel to apply, the deed must clearly state that the purchaser is taking subject to that lease. *See Bourne*, *supra* (our Supreme Court holding that a provision in a deed that "[t]here is a lease on the [property being conveyed] in favor of [name of tenant] which lease is for a period of 10 years" is not sufficient to subject the purchaser's interest to the tenant's leasehold interest).

Tenant, though, argues Current Owner is estopped if it is shown, as alleged, that Current Owner's *purchase contract* with Former Owner contained a provision that the property is being sold subject to the lease, notwithstanding such language was not in the deed, relying on *Braznell*, 227 N.C. at 215, 41 S.E.2d at 747. We conclude Tenant's reliance on *Braznell* is misplaced. As explained below, the Court in *Braznell* did <u>not</u>

hold that "subject to" language in a purchase contract can trigger estoppel. Rather, *Braznell* held that estoppel may apply where it is shown that the deed is subject to reformation to include the appropriate "subject to" language, with evidence that the seller and purchaser expressly greed such language was to be included in the deed and that the language was left out of the deed by mutual mistake.

*Braznell* involved the sale of a building. A bank held a 15-year leasehold interest in the building based on an unregistered lease. The owner entered an agreement to sell the building to a purchaser. At closing, the owner gave to the purchaser a deed with language that the purchaser's fee simple interest was "subject to the leases of the several tenants." The deed, however, did not expressly refer to the leasehold interest of the bank specifically which, was under our case law, insufficient to trigger estoppel. *See Braznell*, 227 N.C. at 213, 41 S.E.2d at 745-46.

The bank sued the purchaser seeking a reformation of the deed to include language stating the purchaser was taking subject to the bank's lease specifically. A jury found that the bank was entitled to this relief. The purchaser appealed.

In its opinion, our Supreme Court first noted that the bank, as a tenant, had standing to sue for reformation of the provision in the deed concerning its lease, notwithstanding the bank was not a party to the deed. *Id.* at 213, 41 S.E.2d at 745.

The Court then recognized the "subject to" language in the deed was not sufficient to protect the bank. *Id.* The Court held, however, that the evidence was sufficient to make out a case for reformation of the deed, noting the evidence showing

"(1) the contract of purchase and sale was made subject to existing leases [including the lease to the bank]; (2) it was understood and agreed [by and between the seller and the purchaser] that the deed of conveyance should contain a provision fully protecting the leasehold rights of the [bank]; and (3) this intent was inadequately expressed and a valid, enforceable provision was omitted by mutual mistake of the parties." *Id.*

In the present case, Tenant makes no allegation that the parties agreed that Former Owner was to incorporate "subject to" language into its deed to the Current Owner, but was omitted due to a mutual mistake. *See Wells Fargo v. Stocks*, 378 N.C. 342, 350, 861 S.E.2d 516, 523 (2021) (noting that where a "deed . . . fails to express the true intention of the parties, it may be reformed . . . whe[n] the failure is due to the mutual mistake of the parties[.]") Rather, Tenant merely alleges the purchase contract contained a provision that Current Owner would "assume all lease obligations owned to any tenants at the Property." Such language, alone, is not enough to make out a claim for reformation of the deed to express that Current Owner's fee simple interest was subject to Tenant's leasehold interests beyond April 2021.

## C. Estoppel Certificate

Tenant next argues that Current Owner is estopped from avoiding its leasehold interest based on the Estoppel Certificate that Current Owner required Former Owner to procure from Tenant during Current Owner's due diligence. We disagree.

An estoppel certificate is a document routinely required by a purchaser of real estate to be signed by the existing tenants of the real estate being sold. When real

estate is sold, any tenant "ceases to hold under the [seller]" and "becomes a tenant of [the purchaser]." *Pearce v. Gay*, 263 N.C. 449, 451, 139 S.E.2d 567, 569 (1965). As such, it is not uncommon for a purchaser, as part of its due diligence, to require each tenant to make representations regarding its lease by signing an estoppel certificate.

Here, Tenant attached the Estoppel Certificate prepared by Current Owner to its complaint. There is nothing in the Estoppel Certificate which stated that Current Owner would be subjecting its to-be-acquired fee simple interest to Tenant's existing, unregistered leasehold interests; it merely requested Tenant to acknowledge what it perceived its leasehold interest in the Property to be. We conclude that the Estoppel Certificate does not give rise to an estoppel.

Tenant, though, argues Current Owner is bound by the statement in the cover letter transmitting the Estoppel Certificate signed by Current Owner's real estate broker that the sale to Current Owner would not affect Tenant's leasehold interests. However, such language is not sufficient to create an estoppel, as Current Owner has failed to show how it "omitted some act or changed [its] position in reliance upon the representations or conduct of [the Current Owner, which was] actual, substantial and justified." *Bourne*, 264 N.C. at 37, 140 S.E.2d at 772. Assuming the language in the cover letter was sufficient to evidence an offer by Current Owner to honor Tenant's leasehold interest, it would not be sufficient to constitute an offer or agreement to allow Tenant to extend the lease for five years beyond April 2021. Specifically, the draft Estoppel Certificate attached to the letter provided that *the landlord* must approve any

lease extension. In any event, Tenant alleges it did not agree to this provision as outlined in the Estoppel Certificate.

## D. Acceptance of 2021 Rent Check

Tenant next argues that Current Owner must honor Tenant's option to renew for five years beyond April 2021 because Current Owner accepted and deposited the rent check sent by Tenant in 2020 covering all of 2021, which included the first eight months of the renewal term. However, our Supreme Court held in *Bourne* that the mere acceptance of rent payments by a new owner during what would be the renewal term does not bind the subsequent purchaser to the longer renewal term outlined in an unregistered lease with a former owner:

> [A]re plaintiffs estopped [from avoiding the lease] by accepting the rent according to the terms of the lease for more than two years? The answer is . . . [a subsequent purchaser] is entitled to rents as long as [the tenant] remains in possession. Acceptance of rents by the landlord does not create a tenancy from year to year nor preclude the landlord from recovery. The receipt of money for the use of premises is not inconsistent with a demand for possession, for it has not misled the defendant nor put him to any disadvantage.

*Bourne*, 264 N.C. at 37, 140 S.E.2d at 772 (internal marks and citation omitted).

Here, in March 2021, Current Owner notified Tenant that it was demanding possession at the end of April 2021 more than a month prior to the end of the current term and attempted to refund any overages it had received. We conclude that Current Owner did not ratify Tenant's right to five-year renewal options by virtue of accepting

rent for eight months beyond the expiration of the initial term but returning it before the renewal term began. In so concluding, we note Current Owner was entitled to part of the proceeds of the rent check, for the period up through April 2021, and returned the difference it was not entitled to. We further note Tenant's allegations that Current Owner otherwise acted inconsistently with any understanding it was going to honor Tenant's renewal rights as contained in the Amendment, for instance, by refusing to sign the landlord authorization to extend Tenant's permit five years, by seeking and obtaining approvals in connection with its planned redevelopment, and by offering Tenant the option to renew its leasehold for two years beyond April 2021.

## E. Other Claims

Because we conclude Tenant has failed to allege facts showing that Current Owner is obligated to honor the Lease and the Amendment, we conclude Tenant's other arguments, including those concerning Current Owner's refusal to sign a landlord authorization for Tenant's permit, its anticipatory repudiation of the Lease, and its unfair and deceptive trade practice claim must fail.

## III. Conclusion

We conclude that the trial court did not err by dismissing Tenant's complaint. Tenant acquired valid interests in and incurred obligations to the Property based on the Lease and the Amendment executed by the Former Owner. Former Owner's sale of the Property to Current Owner did not void these interests and obligations. However, Tenant's complaint fails to allege facts showing that Current Owner's fee

simple interest is subject to Tenant's leasehold interests beyond April 2021 as contained in the Amendment.

Accordingly, we affirm the trial court's order dismissing Tenant's complaint pursuant to Rule 12(b)(6) of our Rules of Civil Procedure.

AFFIRMED.

Judges MURPHY and ARROWOOD concur.